LOWY, J.
**480 This appeal stems from an insurance coverage dispute between the insured, Vibram USA, Inc. (Vibram),[2] and two insurers, Holyoke Mutual Insurance Company in Salem and Maryland Casualty Company, which had issued several **481 general commercial liability policies (the policies) to Vibram.[3] The heirs of the late, famed marathon runner Abebe Bikila sued Vibram in Federal court for improperly using the name "Bikila" to advertise Vibram's running shoes. Vibram tendered the defense to the insurers, who denied coverage on the ground that a provision in the policies covering improper use of another's advertising idea did not cover the claims raised in this action. The insurers, however, agreed to fund Vibram's defense under a reservation of rights. The insurers then commenced an action in the Superior Court seeking a declaration that they were not obligated to defend Vibram in the underlying action. A Superior Court judge granted the insurers' motion for summary judgment on that ground. Vibram appealed.
We conclude that the allegations in the underlying complaint were sufficient to trigger the insurers' duty to defend under the provision of the policies covering the use of another's advertising idea, and therefore, the insurers have an obligation to defend Vibram in the underlying action. Accordingly, we reverse the allowance of the insurers' motion for summary judgment.[4]
*575 1. Factual background and procedure. a. The policies. Between 2009 and 2011, Vibram, a producer of minimalistic shoes that simulate walking and running barefoot, purchased from the insurers the policies, which, among other things, provide coverage for "personal and advertising injury liability." With certain enumerated exceptions, the policies state that the insurers have a duty to defend Vibram from any suit seeking damages for covered losses, particularly for claims seeking damages against Vibram for "advertising injury."
The particular form of advertising injury at issue in this case is the one described in clause (f) of the policies as "[t]he use of another's advertising idea in your 'advertisement.' " The policies define "advertisement" as a "notice that is broadcast or published to the general public or specific market segments about your foods, products or services for the purpose of attracting customers or supporters." The policies do not define the term "advertising idea."
**482 b. The underlying action. In 2015, while the policies were in effect, the living heirs of Abebe Bikila (Bikila family), the famed runner who won the 1960 Olympic marathon while running barefoot,[5] commenced the underlying action against Vibram in the United States District Court for the Western District of Washington. The Bikila family's complaint alleges that Vibram had misused their late relative's name in advertising and promoting Vibram's " 'FiveFingers' line of minimalist running shoes ... [that are designed] to mimic biomechanical properties of barefoot running while providing the protection of a conventional shoe." The complaint contends that Vibram's "Bikila model shoes are named after Abebe Bikila and are intended to associate [Vibram's] commercial footwear with Abebe Bikila's legendary barefoot Olympic feats." The complaint alleges, in relevant part, that the Bikila family has "by their commercial uses, sponsorships and promotion of historical and education events, and multimedia events emphasizing the cultural and athletic legacy of Abebe Bikila, ... intentionally associated their family name with Abebe Bikila's barefoot dedication to succeed under any circumstances."
The Bikila family's commercial uses of the name Bikila include: (1) operating a sporting goods store bearing the name "Abebe Bikila"; (2) publishing a book entitled "Triumph and Tragedy: A History of Abebe Bikila and his marathon career"; (3) authorizing the use of "Abebe Bikila" in a Japanese commercial; and (4) authorizing a feature film portraying the last years of Abebe Bikila's life. Further, the Bikila family has operated an Internet Web site "offer[ing] a comprehensive experience of the life and legacy of Abebe Bikila ... contain[ing] pictures, videos, news events, and information on current races such as the Abebe Bikila International Marathon ... held annually in Addis Ababa, which is sponsored by the Bikila Family."
The complaint enumerates four counts: (1) a violation of the **483 Washington Personality *576 Rights Act; (2) Washington Consumer Protection Act claims; (3) a claim of false designation and Federal unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) ; and (4) a claim that Vibram had been unjustly enriched by its unauthorized use of Abebe Bikila's name.
c. Coverage dispute. As indicated previously, after denying that they had a duty to defend Vibram and agreeing to fund the defense under a reservation of rights, the insurers commenced an action in Superior Court, seeking a declaration that they did not have a duty to defend Vibram in the underlying action because the complaint did not raise claims covered by the policies. Vibram counterclaimed, seeking a declaration that the claims in the underlying action were covered by the policies, and therefore, that the insurers were obligated to defend Vibram. Following cross motions for summary judgment, the motion judge agreed with the insurers. Specifically, the judge concluded that the complaint did not raise a claim that Vibram had used another's advertising idea in Vibram's advertisement. According to the judge, the complaint only raised claims implicating a "personality right" -- an intellectual property right,[6] and a claim that is excluded from coverage under the policies.[7] We disagree.
2. Discussion. "Our review of a motion judge's decision on summary judgment is de novo, because we examine the same record and decide the same questions of law." Kiribati Seafood Co., LLC v. Dechert LLP, 478 Mass. 111, 116, 83 N.E.3d 798 (2017). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).
The issue before us is whether the allegations in the complaint raise a claim that is potentially covered under the policies, thus triggering the insurers' duty to defend Vibram. "It is settled that an insurer's duty to defend is independent from, and broader than, its duty to indemnify." Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 357, 951 N.E.2d 662 (2011), quoting **484 A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 527, 838 N.E.2d 1237 (2005).[8] An insurer's duty to defend the insured is triggered where the allegations in the complaint "are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms," Billings v. Commerce Ins. Co., 458 Mass. 194, 200, 936 N.E.2d 408 (2010), notwithstanding the possibility that the underlying claim may ultimately fail, or that the merits of the claim are weak or frivolous. See Metropolitan Prop. & Cas. Ins. Co., supra at 358, 951 N.E.2d 662.
"A liability insurer's duty to defend is determined by comparing the allegations in the third-party complaint against the provisions of the insurance policy." Deutsche Bank Nat'l Ass'n v. First *577 Am. Title Ins. Co., 465 Mass. 741, 744-745, 991 N.E.2d 638 (2013). The underlying complaint "need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Billings, 458 Mass. at 200-201, 936 N.E.2d 408, quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 319, 458 N.E.2d 338 (1983). Accordingly, a duty to defend does not turn on the specific cause of action enunciated by the pleader or require that the complaint mirror the policy's coverage language. See Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12-13, 545 N.E.2d 1156 (1989). Rather, the analysis focuses on "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." Billings, supra at 201, 936 N.E.2d 408, quoting Boston Symphony Orch., Inc., supra at 12-13, 545 N.E.2d 1156. "Any uncertainty as to whether the pleadings include or are reasonably susceptible to an interpretation that they include a claim covered by the policy terms is resolved in favor of the insured ...." Deutsche Bank Nat'l Ass'n, 465 Mass. at 745, 991 N.E.2d 638.
Vibram's principal contention is that the Superior Court judge erred in concluding that the complaint did not assert a claim that it had used the Bikila family's advertising idea when it advertised its running shoes. According to Vibram, the advertising idea alleged in the complaint was the Bikila family's intentional association **485 of their family name with Abebe Bikila's legacy and desirable qualities, and their use of the name "Bikila" to advertise the family's running-related commercial ventures. Therefore, because use of an "advertising idea" is within the scope of covered "advertising injur[ies]" covered by the policies, Vibram claims that the insurers had a duty to defend it in the underlying action. We agree.
"As with any contract, in interpreting an insurance policy, we begin with the plain language of the policy." Mount Vernon Fire Ins. Co. v. Visionaid, Inc., 477 Mass. 343, 348, 76 N.E.3d 204 (2017). The policies here provide coverage for advertising injuries that arise from the insured's use of another's "advertising idea," but do not define the term "advertising idea." Therefore, we interpret the words "in light of their plain meaning, ... giving full effect to the document as a whole[,] ... consider[ing] 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered' ... [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies" (citation omitted). Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159-160, 993 N.E.2d 684 (2013). Where the terms of a policy are susceptible to different interpretations, we "construe the policy [terms] in favor of the insured and against the drafter, who is invariably the insurer, unless specific policy language is controlled by statute or prescribed by another authority." Metropolitan Prop. & Cas. Ins. Co., 460 Mass. at 362-363, 951 N.E.2d 662. In addition, where, as here, an insurer claims that a policy exclusion negates the duty to defend, "any ambiguity in the exclusion 'must be construed against the insurer.' " Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 282, 675 N.E.2d 1161 (1997), quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431, 204 N.E.2d 273 (1965).
*578 This court has not yet had occasion to interpret the phrase "advertising idea" in an insurance coverage dispute where advertising injury liability is at issue. The phrase has been described as "not hav[ing] a single, plain and clear meaning[,]" Lebas Fashion Imports of USA v. ITT Hartford Ins. Group, 50 Cal. App. 4th 548, 560, 59 Cal.Rptr.2d 36 (1996) ; however, myriad other jurisdictions have interpreted "advertising idea" in these circumstances. The United States Court of Appeals for the Third Circuit has broadly defined "advertising idea" as "an idea about the solicitation of business and customers," Green Mach. Corp. v. Zurich-American Ins. Group, 313 F.3d 837, 839 (3d Cir. 2002) ; or "ideas in connection **486 with marketing and sales and for the purpose of gaining customers," CAT Internet Servs., Inc. v. Providence Washington Ins. Co., 333 F.3d 138, 142 (3d Cir. 2003). Similarly, the United States Court of Appeals for the Eighth Circuit stated that the "plain and ordinary meaning of 'advertising idea' generally encompasses an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage" (citation omitted). American Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 587 (8th Cir. 2002).[9]
It is not surprising that given this broad definition, courts have concluded that a wide variety of concepts, methods, and activities related to calling the public's attention to a business, product, or service constitute advertising ideas. See, e.g., Street Surfing, LLC v. Great Am. E & S Ins. Co., 776 F.3d 603, 611-612 (9th Cir. 2014) (logo and brand name); Dish Network Corp. v. Arch Specialty Ins. Co., 659 F.3d 1010, 1022 (10th Cir. 2011) (patented telephone service enabling sale and promotion of products); Native Am. Arts, Inc. v. Hartford Cas. Ins. Co., 435 F.3d 729, 733 (7th Cir. 2006) (advertising strategy of "trad[ing] upon a reputation, history, and sales advantage" associated with Native American made products); Taco Bell Corp. v. Continental Cas. Co., 388 F.3d 1069, 1072 (7th Cir. 2004) (using concept of "Psycho Chihuahua" obsessed with Taco Bell food to advertise business); State Auto Prop. & Cas. Ins. Co. v. The Travelers Indem. Co. of Am., 343 F.3d 249, 258 (4th Cir. 2003) (using word "NISSAN" to promote **487 vehicles to public constituted "quintessential example of trademark functioning to advertise a company's products"); CAT Internet Servs., Inc., 333 F.3d at 142 (use of Internet domain name) ; Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1189 (11th Cir. 2002) (using artwork *579 and product model numbers designed to promote products [claim for trade dress infringement] ); American Simmental Ass'n, 282 F.3d at 587 (using word "fullblood," connoting desirable quality, to advertise Simmental cattle breed); Gustafson v. American Family Mut. Ins. Co., 901 F.Supp.2d 1289, 1301 (D. Colo. 2012) (agent misrepresenting himself as working for another company for purposes of inducing customers to make purchases); Amazon.com Int'l, Inc. v. American Dynasty Surplus Lines Ins. Co., 120 Wash. App. 610, 616-617, 619, 85 P.3d 974 (2004) (patented technology used to market music for sale on Internet Web site).
Although "advertising idea" is clearly a broad concept, it is not all-encompassing. Generally, an "advertising idea" does not include a nonadvertising idea that is later advertised for sale. See Green Mach. Corp., 313 F.3d at 839, quoting Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 748 (3d Cir. 1999) ; Winklevoss Consultants, Inc. v. Fed. Ins. Co., 991 F.Supp. 1024, 1034 (N.D. Ill. 1998) (covered use "must at the very least relate to marketing, not to manufacture or production"). See 14 Couch, Insurance § 201:53, at 201-82 (3d ed. 2005) (advertising injury "does not extend to injury caused by other activities that are coincidentally advertised"). Otherwise stated, "[i]f the insured took an idea for soliciting business or an idea about advertising, then the claim is covered ... [b]ut if the allegation is that the insured wrongfully took a ... product and tried to sell that product, then coverage is not triggered" (citation omitted). Auto Sox USA Inc. v. Zurich N. Am., 121 Wash. App. 422, 427, 88 P.3d 1008 (2004). See, e.g., Rose Acre Farms, Inc. v. Columbia Cas. Co., 662 F.3d 765, 768-769 (7th Cir. 2011) (conspiring to fix price of eggs); Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co., 500 F.3d 640, 643, 646 (7th Cir. 2007) (disparagement of competitor's pineapples to undermine their advertising); Green Mach. Corp., supra at 839-840 (advertising another's patented method for cutting concrete); Ekco Group, Inc. v. Travelers Indemnity Co. of Ill., 273 F.3d 409, 413 (1st Cir. 2001) (design of product); Frog, Switch & Mfg. Co. v. The Travelers Ins. Co., 193 F.3d at 749-750 (misappropriation of product design); Hameid v. National Fire Ins. of Hartford, 31 Cal. 4th 16, 19-20, 1 Cal.Rptr.3d 401, 71 P.3d 761 (2003) (taking customer **488 list and soliciting customers from it); Auto Sox USA Inc., supra (manufacturing and selling patented product).
Here, the Superior Court judge's decision relied, at least in part, on the conclusion that the Bikila family had not actually used the name "Bikila" as an advertising idea, and thus there was no claim that Vibram used another's advertising idea. Instead, the judge interpreted the complaint as alleging that Vibram had infringed Abebe Bikila's personality rights, a claim not covered under the policies.
As an initial matter, it is uncontested that Vibram's use of "Bikila" to advertise its minimalist FiveFingers running shoes constituted an advertising idea. Vibram used the name of a legendary barefoot marathon runner for purposes of calling attention to its running shoes that simulated barefoot running.
In their complaint, the Bikila family asserted that through "their commercial uses, sponsorship and promotion of historical and educational events," they "intentionally associated their family name with Abebe Bikila's barefoot dedication to succeed under any circumstances." The name Bikila appears to have been prominently used in each of these running-related ventures, including operating a sporting goods store named after Bikila; sponsoring the annual "Abebe Bikila International Marathon";
*580 operating an Internet Web site to promote that annual marathon as well as Bikila's life and legacy; publishing and selling a book bearing Bikila's name; permitting Abebe Bikila to be featured in a commercial; and authorizing a feature length film about him.
Accordingly, we conclude that the complaint reasonably may be interpreted as claiming that the Bikila family intentionally created a connection between their family name and Abebe Bikila's legacy and desirable qualities for purposes of using "Bikila," and everything it conveyed, to attract customers to their running-related commercial ventures. Cf. American Simmental Ass'n, 282 F.3d at 587 (use of word "fullblood" to advertise cattle breed "falls within the ordinary meaning of an 'advertising idea,' " because term called attention to what was being sold by conveying desirable quality). In other words, the Bikila family's advertising idea was using the name Bikila, and the legacy that name conveyed, to attract business to each of their ventures. Because the allegations in the complaint generally allege that the Bikila family used the Bikila name to advertise and promote their various running-related ventures, the judge erred in concluding that the Bikila family had not actually used the name Bikila as an advertising idea.
**489 The policies here state that the insurers will defend Vibram for, among other things, claims that Vibram was liable for an advertising injury -- specifically, through Vibram's use of another's advertising idea. Vibram used "Bikila" to advertise its running-related products, and the complaint alleged that the Bikila family had also used "Bikila" to advertise their running-related commercial ventures. At its core, the complaint alleges that Vibram improperly used "Bikila" for the same purposes as the Bikila family had used it -- to advertise its running-related ventures and business. Given that determining whether a claim is covered by an insurance policy focuses on the nature of the claim, not its relative strengths or weaknesses, we conclude that it was reasonable for Vibram to expect that the policies it purchased, which provided coverage in the event Vibram was sued for alleged advertising injuries, would cover it for the claims at issue in the underlying action.[10]
The insurers argue that the complaint raises claims related only to Abebe Bikila's right of publicity, and not an advertising idea. They argue that because the Bikila family did not use the name Bikila to market a particular product or service, the name Bikila did not develop a "secondary meaning" or an association among consumers between a product or service and its source. The insurers point out, correctly, that many of the cases discussing an advertising idea involve claims of trademark infringement. See *581 State Auto Prop. & Cas. Ins. Co., 343 F.3d at 258 (NISSAN "quintessential example of trademark functioning to advertise a company's products"). However, the insurers have not directed this court to any authority, and we have not uncovered any, standing for the proposition that an advertising idea needs to have secondary meaning or otherwise embody principles of trademark **490 law. Indeed, such an interpretation is unnecessarily narrow given that an advertising idea focuses on how the public's attention is being drawn to a business or product and not necessarily on the business or product itself. American Simmental Ass'n, 282 F.3d at 585, is instructive, given that the court there concluded that the term "fullblood" was an advertising idea, without referencing secondary meaning or trademark law. Although the term "fullblood" described a desirable quality in cattle, the focus of the court's analysis did not necessarily depend on the specific secondary meaning of the term "fullblood," but rather on the fact that the term was used as a way of soliciting business. Id. at 587.[11]
We see no reason to narrow the scope of "advertising idea" by incorporating the secondary meaning requirement proposed by the insurers. However, even if there were a secondary meaning requirement in these circumstances, given the standard under which we analyze insurance coverage disputes, the complaint generally asserts that the Bikila family intentionally and specifically connected the name to running-related ventures, and the name itself conveys a "barefoot dedication to succeed under any circumstances," a desirable quality for any of these ventures.
Accordingly, we reverse the grant of summary judgment in favor of the insurers. The case is remanded to the Superior Court for entry of a judgment declaring that the insurers are obligated to pay Vibram's reasonable costs for defending the underlying action.
So ordered.

An affiliate of Vibram USA, Vibram FiveFingers, LLC, was involved in this case. Because distinguishing between the two entities is not relevant to our decision, we refer to a single defendant, "Vibram."

To the extent there are some linguistic differences between the insurance policies at issue, those differences are not at issue in this appeal. Accordingly, for simplicity, we refer to "the policies" as encompassing all of the policies at issue.

Given this disposition, we need not reach the issues raised by the parties related to recoupment of monies paid for defending Vibram under a reservation of rights.

Because Abebe Bikila was originally designated as an alternate runner for the Ethiopian national team, when the decision was made that he would run in the Olympic marathon, the team's shoe sponsor could not provide him with a pair of running shoes that fit properly. Abebe Bikila ran the race barefoot and is the only person to win an Olympic marathon gold medal while competing barefoot.
He also won the 1964 Olympic marathon forty days after undergoing an appendectomy. In 1969, he was involved in an automobile accident that left him paralyzed. He died several years later from complications related to that accident.

The complaint alleges that Vibram's parent company secured a trademark for "Bikila" as a word mark in 2010.

The policies contain an exclusion for claims arising out of "infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.' However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan."

The duty to indemnify "arises only after the insured's liability has been established and is between the insurer and the insured," as opposed to the broader duty to defend, which "arises in situations involving threatened or actual litigation by a third party," against the insured. See Wilkinson v. Citation Ins. Co., 447 Mass. 663, 671, 856 N.E.2d 829 (2006).

Equally broad definitions of an "advertising idea" are reflected in other cases. See, e.g., Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co., 500 F.3d 640, 646 (7th Cir. 2007) ("idea about the solicitation of business"); State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 258 (4th Cir. 2003) (manner in which products are promoted to public); Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1188 (11th Cir. 2002) ("any idea or concept related to the promotion of a product to the public"); Ekco Group, Inc. v. The Travelers Indem. Co. of Ill., 273 F.3d 409, 413 (1st Cir. 2001) ("an advertising concept or plan for an advertising campaign"); Evanston Ins. Co. v. Clartre, Inc., 158 F.Supp.3d 1110, 1190-1120 (W.D. Wash. 2016), quoting Amazon.com Int'l, Inc. v. American Dynasty Surplus Lines Ins. Co., 120 Wash. App. 610, 85 P.3d 974 (2004) ("another's manner of advertising, ... an idea concerning the solicitation of business and customers, or ... the manner by which another advertises its goods or services" [quotation omitted] ); Gustafson v. American Family Mut. Ins. Co., 901 F.Supp.2d 1289, 1301 (D. Colo. 2012) ("Most courts presented with this issue have held that the use of another's idea means the wrongful taking of the manner by which another advertises its goods or services" [citation and quotation omitted] ); Winklevoss Consultants, Inc. v. Federal Ins. Co., 991 F.Supp. 1024, 1038 (N.D. Ill. 1998) ("an idea about the solicitation of business").

Considering the other kinds of losses that may be proved in the complaint bolsters the conclusion that Vibram reasonably expected coverage in the underlying action. The Bikila family's claim under the Washington Consumer Protection Act alleges that Vibram's action "constitute[d] unfair or deceptive acts or practices in the conduct of trade or commerce" that would be "confusing and deceptive to the public." Notably, in this portion of the complaint, the Bikila family stated that Vibram's conduct had caused damage to "Abebe Bikila's business reputation, personality right, and other rights and properties of the Bikila family." Given the underlying complaint's frequent references to the Bikila family's "commercial uses" of Abebe Bikila's name, it is more than reasonable to conclude that the Washington Consumer Protection Act claim -- by referencing the "other rights and properties" of the Bikila family -- contemplated damages from Vibram's use of an advertising idea and the resulting consumer confusion.

To the extent that the complaint also can be interpreted as alleging a misappropriation of Abebe Bikila's right of publicity, which might be excluded from coverage under the policy, it does not foreclose the possibility that the complaint asserts claims that are potentially covered under the policy provision providing coverage from use of another's advertising idea. Furthermore, where there is ambiguity in this regard, we must resolve the issue in favor of the insured. See Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 465 Mass. 741, 745, 991 N.E.2d 638 (2013).