**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  November 17, 2020
Date Decided:  November 19, 2020

Michael F. Duggan, Esquire
Marc Sposato, Esquire
Riley B. MacGray, Esquire
Marks, O'Neill, O'Brien,
Doherty & Kelly, P.C.
300 Delaware Avenue, Suite 900
Wilmington, DE 19801

Jonathan S. Zelig, Esquire
Day Pitney LLP
One Federal Street, 29th Floor
Boston, MA 02110

Daniel J. Raccuia, Esquire
Day Pitney LLP
242 Trumbull Street
Hartford, CT 0610

Steven L. Caponi, Esquire
Matthew B. Goeller, Esquire
K&L Gates LLP
600 N. King Street, Suite 901
Wilmington, DE 19801

David F. McGonigle, Esquire
Lucas J. Tanglen, Esquire
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222

Steven P. Wright, Esquire
K&L Gates LLP
One Lincoln Street
Boston, MA 02111

*RE: Indian Harbor Ins. Co. v. SharkNinja Operating LLC, et al.*
Civil Action No. N20C-02-014 PRW CCLD

Dear Counsel:

As the parties are considering the need for any further proceedings in this matter,

the Court provides this Letter Opinion in lieu of a more formal written decision to

resolve their pending cross-motions (D.I. 30, 32) on the duty to defend.

## I. INTRODUCTION

This case involves an insurance coverage dispute in which Indian Harbor Insurance Company claims it has no duty to defend SharkNinja Operating LLC (and affiliates—collectively, "SharkNinja") against a patent infringement and false advertising lawsuit brought by a competing vacuum manufacturer (the "*iRobot* Action"). Indian Harbor contracted with SharkNinja to provide the latter protection from exposure to what the subject policies call "personal and advertising injury." SharkNinja says the *iRobot* Action is such an injury and demands that Indian Harbor come to its defense. Indian Harbor seeks a declaration that SharkNinja must face the *iRobot* Action on its own.

The parties have filed cross-motions for judgment on the pleadings contesting Indian Harbor's defense duties. Those motions require the Court to interpret certain subject insurance policy terms using Massachusetts law. For the reason now-explained, Indian Harbor must—under the law of Massachusetts—defend SharkNinja against the *iRobot* Action. Accordingly, Indian Harbor's motion is **DENIED** and SharkNinja's motion is **GRANTED**.

## II. FACTUAL BACKGROUND

### A. THE INSURANCE POLICIES

Indian Harbor issued SharkNinja two commercial general liability insurance policies (collectively, the "Policies") that, taken together, insured SharkNinja from November 14, 2017, through November 14, 2019.[1] Each policy provides primary insurance coverage for "personal and advertising injury" liability.[2] As relevant here, "personal and advertising injury" is defined as an injury "arising out of one or more of the following offenses" . . .

    (d)    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .

    (f)    The use of another's advertising idea in your "advertisement"; or

    (g)    Infringing upon another's copyright, trade dress or slogan in your "advertisement"[.][3]

---

[1]    Indian Harbor's Complaint ("Compl.") ¶¶ 9-10 (D.I. 1).

[2]    *Id.* ¶ 13.

[3]    Compl., Exhibit A, § 5.14 ("Definitions"). For the purposes of this review, the Policies are interchangeable. So, the Court cites just one of them when referencing both.

Other than "advertisement," none of the terms in these particular subsections is further defined.[4]

Litigation involving personal and advertising injury ordinarily triggers Indian Harbor's defense duties.[5] According to the Policies, Indian Harbor has "the right and duty to defend the insured against any 'suit' seeking . . . damages" for "personal and advertising injury."[6] But the Policies also contain a number of exclusions that relieve Indian Harbor of its duty to defend certain species of personal and advertising injury.[7] There are two such exclusions invoked by Indian Harbor here: the "Failure to Conform Exclusion" and the "IP Infringement Exclusion."[8] Under the Failure to Conform Exclusion, Indian Harbor will not defend where "personal and advertising injury aris[es] out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"[9] Under the IP Infringement Exclusion, Indian Harbor will not defend where "personal and advertising injury

---

[4]    *See generally* Definitions; *see also id.* § 5.1 ("Advertisement means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (internal quotation marks omitted)).

[5]    *See id.*, Coverage B – Personal and Advertising Injury Liability § 1(a).

[6]    *Id.*

[7]    *See id.* § 2 ("Exclusions").

[8]    *Id.* §§ 2(g), (i).

[9]    *Id.* § 2(g).

aris[es] out of the infringement of copyright, patent, trademark or other intellectual property rights."[10] Relevant to these arguments and these exclusions, "advertisement" and "personal and advertising injury" are the only policy-defined terms.[11]

## B. THE *IROBOT* ACTION

In the fall of 2019, things got messy for SharkNinja. iRobot Corporation, a rival vacuum cleaner maker, sued SharkNinja in federal court alleging violations of the Lanham Act.[12] In its complaint, iRobot accuses SharkNinja of infringing several iRobot patents and advertising falsely about the capabilities of its "Shark IQ" vacuum cleaner to the detriment of iRobot's products and goodwill.[13] Specifically, iRobot has alleged SharkNinja deployed a smear campaign calculated to target, and to assert false advantages over, iRobot's vacuum cleaners, and to mislead consumers about the legitimacy and fairness of iRobot's pricing in comparison to its own pricing.[14] This fusillade of alleged misinformation purportedly has threatened or actually impaired

---

[10]  *Id.* § 2(i).

[11]  *See generally* Definitions.

[12]  Compl. ¶ 19; *id.*, Exhibit C (Second Amended Complaint, *iRobot Corp. v. SharkNinja Operating LLC, et al.,* No. 1:19-cv-12125-ADB (D. Mass. Dec. 9, 2019), ECF No. 84 (hereinafter "*iRobot* SAC")).

[13]  *See, e.g., iRobot* SAC ¶¶ 1-4.

[14]  *See, e.g., id.* ¶¶ 19-43.

iRobot with lost sales, price erosion, reputational harm and depreciation of market share.[15]  iRobot seeks injunctive relief and damages.[16]  SharkNinja has admitted no wrongdoing.[17]  And the case is now active in federal district court in Massachusetts.[18]

## C. THE PRESENT COVERAGE DISPUTE

On November 20, 2019, SharkNinja notified Indian Harbor of the *iRobot* Action and requested a defense and indemnification for any settlement or adverse judgment above the retention premium it bears.[19]  But Indian Harbor declined and in a February 2020 letter, explained why it felt it has no duty to defend against the *iRobot* Action.[20] According to Indian Harbor, the false advertising claim doesn't meet the definition of "personal and advertising injury" because the claim doesn't allege a "disparagement" of iRobot's products.[21]  Even if the false advertising claim were covered, Indian Harbor

---

[15]   *See id.* ¶ 21.

[16]   *See id.* Prayer for Relief.

[17]   *See* Compl., Exhibit D (Underlying Answer in *iRobot* Action ¶¶ 23-28, 30, 33-35, 38); SharkNinja Answer and Counterclaims Against Indian Harbor ¶¶ 24-25, 28-31 ("Answer") (D.I. 20).

[18]   *iRobot Corp. v. SharkNinja Operating LLC, et al.,* No. 1:19-cv-12125-ADB (D. Mass.).

[19]   Compl. ¶ 32.

[20]   *Id.* ¶¶ 32-33.

[21]   *Id.* ¶ 34.

says, a defense would be unavailable because the Failure to Conform Exclusion applies.[22]  And lastly, Indian Harbor suggests, a defense against the patent infringement claims is unavailable because the IP Infringement Exclusion applies.[23]

For good measure, Indian Harbor then sued in this Court seeking a declaration that it has no duty to defend SharkNinja.[24]  SharkNinja answered with breach-of-contract counterclaims and also has requested a declaration that Indian Harbor must defend it.[25]  The parties are proceeding on these cross-motions for judgment on the pleadings under a Court-approved interim case management order.[26]  Thereunder, the parties have stipulated that Massachusetts insurance law governs their duty-to-defend dispute.[27]  The Court heard argument on the motions earlier this week[28] and they are now ripe for resolution.

---

[22]  *Id.*

[23]  *Id.*

[24]  *Id.* ¶¶ 36-45.

[25]  *See generally* Answer.

[26]  D.I. 28.

[27]  *Id.*

[28]  D.I. 46.

## IV. DISCUSSION

### A. STANDARD OF REVIEW

A party may move for judgment on the pleadings under this Court's Civil Rule 12(c).[29] "In determining a Rule 12(c) motion, the Court is required to view the facts pleaded and the inferences to be drawn from such facts in the light most favorable to the non-moving party."[30] The Court "must take the well-pleaded facts alleged in the complaint as admitted."[31] The Court "also assumes the truthfulness of all well-pled allegations of fact in the complaint."[32] And the Court "accords a party opposing a Rule 12(c) motion the same benefits as a party defending a motion under Rule 12(b)(6)."[33] As a result, "[t]he standard for a motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss" under Rule 12(b)(6)."[34]

---

[29] Super. Ct. Civ. R. 12(c).

[30] *Catlin Specialty Ins. Co. v. CBL & Assocs. Props., Inc.*, 2017 WL 4784432, at *6 (Del. Super. Ct. Sept. 20, 2017) (citation omitted).

[31] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (citations omitted).

[32] *Catlin Specialty*, 2017 WL 4784432, at *6.

[33] *Id.*

[34] *Silver Lake Off. Plaza, LLC v. Lanard & Axibund, Inc.,* 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014) (internal quotations omitted).

"Cross-motions for judgment on the pleadings function in a similar manner to cross-motions for summary judgment."[35]  In turn, where cross-motions for judgment on the pleadings are filed on a particular issue and no material facts are in dispute thereon[36] "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[37]  So upon such cross-motions for judgment on the pleadings, this Court will grant judgment on that particular issue to one of the moving parties.[38]  And on that issue, the questions before this Court are questions of law—not of fact—the merits of which are ripe for decision.[39]

## B.  MASSACHUSETTS LAW AND THE DUTY TO DEFEND

Though the law applied to these motions may be foreign, the analysis required is very familiar.  Indian Harbor's duty to defend turns on the threshold question of whether

---

[35]  *Id.*

[36]  *See Almah LLC v. Lexington Ins. Co.,* 2016 WL 369576, at *4 (Del. Super. Ct. Jan. 27, 2016) ("The Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."); *see also Anolick v. Holy Trinity Greek Orthodox Church*, 787 A.2d 732, 738 (Del. Ch. 2001) (But "[t]he presence of cross-motions 'does not act *per se* as a concession that there is an absence of factual issues.'" (quoting *United Vanguard Fund, Inc. v. TakeCare, Inc.,* 693 A.2d 1076, 1079 (Del. 1997))).

[37]  *Silver Lake,* 2014 WL 595378, at *6 (citing Super. Ct. Civ. R. 56(h)).

[38]  *See Health Corp. v. Clarendon Nat. Ins. Co,* 2009 WL 2215126, at *11 (Del. Super. Ct. July 15, 2009) (describing standard for cross-motions for summary judgment).

[39]  *See id.*

the allegations undergirding the *iRobot* Action spell out a potentially-covered "personal and advertising injury" under the Policies. If the *iRobot* Action satisfies that definition, then the Court evaluates next whether Indian Harbor has carried its burden to show an exclusion absolves it from its defense duties. If the Court concludes that burden has not been met, then Indian Harbor must honor its duty to defend SharkNinja as a matter of law.

"'It is settled that an insurer's duty to defend is independent from, and broader than, its duty to indemnify.'"[40] And in Massachusetts, "[a]n insurer's duty to defend is triggered where the allegations in the complaint 'are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms.'"[41] That is true even if "the merits of the claim are weak or frivolous"[42] or "the insurer could eventually be determined to have no duty to indemnify the insured."[43] To determine if a defendable claim has been "roughly sketched," the Court "'compar[es]

---

[40] *Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc.*, 106 N.E.3d 572, 576 (Mass. 2018) (quoting *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 951 N.E.2d 662, 667 (Mass. 2011)).

[41] *Vibram*, 106 N.E.3d at 576 (quoting *Billings v. Commerce Ins. Co.*, 936 N.E.2d 408, 414 (Mass. 2010)).

[42] *Vibram*, 106 N.E.3d at 576 (citation omitted).

[43] *Morrison*, 951 N.E.2d at 668 (internal quotation marks omitted).

the allegations in the third-party complaint against the provisions of the insurance policy.'"[44]

"The underlying complaint need only show, through general allegations, a *possibility* that the liability claim falls within insurance coverage."[45] Put differently, "[t]here is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within . . . coverage."[46] And the manner in which the plaintiff stylizes her accusations need not "mirror the policy's coverage language."[47] The Court's task is simply to "envisag[e] what kinds of losses may be proved as lying within the range of the allegations . . . and then see[] whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy."[48] Any "uncertainty as to whether the pleadings include or are reasonably susceptible" to coverage is "resolved in favor of the insured."[49]

---

[44] *Vibram*, 106 N.E.3d at 577 (quoting *Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co.*, 991 N.E.2d 638, 641 (Mass. 2013)).

[45] *Vibram*, 106 N.E.3d at 577 (emphasis added) (internal quotation marks omitted).

[46] *Id.* (internal quotation marks omitted).

[47] *Id.* (citing *Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1159 (Mass. 1989)).

[48] *Vibram*, 106 N.E.3d at 577 (internal quotation marks omitted); *see Morrison*, 951 N.E.2d at 668.

[49] *Vibram*, 106 N.E.3d at 577 (internal quotation marks omitted).

"As with any contract, in interpreting an insurance policy," the Court "begin[s] with the plain language of the policy."[50] The Court gives "full effect to the document as a whole, . . . considering what an objectively reasonable insured . . . would expect to be covered."[51] And when there is ambiguity, the Court will "construe the policy terms in favor of the insured and against the . . . insurer."[52] Finally, the insurer bears the burden of showing that any exclusion precludes defense coverage.[53] But, the Court will strictly construe exclusions and resolve any ambiguity in those too against the insurer.[54]

### 1. The **iRobot** Action "Roughly Sketches" "Personal and Advertising Injury."

Recall that the Policies define a "personal and advertising injury" expansively as one "arising out of"—(d) a "publication . . . that slanders or libels . . . or disparages an organization's . . . products;" (f) "the use of another's advertising idea;" or

---

[50] *Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 76 N.E.3d 204, 208 (Mass. 2017).

[51] *Vibram*, 106 N.E.3d at 577; *see Golchin v. Liberty Mut. Ins. Co.*, 993 N.E.2d 684, 687 (Mass. 2013).

[52] *Vibram*, 106 N.E.3d at 577 (internal quotation marks and brackets omitted); *see J. D'Amico, Inc. v. City of Bos.*, 186 N.E.2d 716, 721 (Mass. 1962) (Court "aided by the principle that doubts about ambiguous insurance policy provisions are to be resolved against the insurance company.").

[53] *See, e.g., Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 568 N.E.2d 631, 633 (Mass. App. Ct. 1991); *see also Billings*, 936 N.E.2d at 416.

[54] *Hakim v. Ma. Insurers Insolvency Fund*, 675 N.E.2d 1161, 1165 (Mass. 1997) ("[A]ny ambiguity in [an] exclusion must be construed against the insurer." (internal quotation marks omitted)); *Preferred Mut. Ins. Co. v. Gamache*, 675 N.E.2d 438, 444 (Mass App. Ct. 1997), *aff'd*, 686 N.E.2d 989 (Mass. 1997).

(g) "infringing upon another's . . . slogan."[55]  SharkNinja contends iRobot's allegations fit squarely within all of these offenses.[56]  Perhaps that's so.  But a plain reading of the disjunctive "or" separating each qualifying offense (and its suboffense) makes such a determination unnecessary.  For the Court may find a "rough[] sketch[]" of personal and advertising injury if any one is "general[ly] alleg[ed]."[57]

Take, for example, "disparages . . . an organization's . . . products."[58]  Looking to the *iRobot* Action's complaint, iRobot generally alleges SharkNinja –

(1)   "directly targets iRobot's Roomba vacuums . . . [by] expressly and falsely claim[ing] that the Shark IQ offers the same technological advancements as iRobot, but at less than half the price;"[59]

(2)   makes "false comparisons to iRobot's vacuums [that] threaten iRobot with . . . reputational harm;"[60]

(3)   makes "false statements about its—and iRobot's—vacuums [to] deceive consumers about the performance and capabilities of these products;"[61]

---

[55]   Definitions, § 5.14.

[56]   SharkNinja Op. Br. at 15-27 (D.I. 32).

[57]   *Vibram*, 106 N.E.3d at 576-77 (internal quotation marks omitted); *see Visionaid*, 76 N.E.3d at 208 (endorsing plain language analysis in contracts).

[58]   Definitions, § 5.14(d).

[59]   *iRobot* SAC ¶ 20.

[60]   *Id.* ¶ 21.

[61]   *Id.*

(4) "tries to convince consumers" misleadingly "that it offers the same benefit[s] as iRobot's patented technology;"[62]

(5) "mimic[s] iRobot's [marketing] claims regarding the performance and technological advancement of its own Roomba vacuums" by asserting false superiority to or equivalence with the Roomba while "hid[ing] the shortcomings of" the Shark IQ;[63]

(6) "compares its products directly to iRobot's vacuums, falsely telling consumers that the Shark IQ offers the same benefits as iRobot's products 'at less than half the price;'"[64]

(7) "expressly refers to iRobot's Roomba vacuums by name throughout its advertisements," which "exacerbated . . . [the] false advertising. . ." during peak quarters;[65] and

(8) "direct[ly] diver[ts] . . . sales from iRobot to SharkNinja" through a "false and deceptive campaign" against iRobot resulting in "a loss of goodwill."[66]

No doubt, SharkNinja's advertising has singled-out iRobot for quite a bit of negative advertising talk. But, has SharkNinja potentially "disparage[d]" iRobot as a matter of law? For the purpose of determining this coverage question, a Massachusetts court would likely say so.

---

[62]   *Id.* ¶ 32.

[63]   *Id.* ¶¶ 38-39, 41-42.

[64]   *Id.* ¶ 41.

[65]   *Id.* ¶¶ 42-43.

[66]   *Id.* ¶ 121.

Under Massachusetts law, "[d]isparage means, among other things, to lower in rank and estimation by actions or words or to speak slightingly of."[67] Here, iRobot's allegations are "reasonably susceptible of an interpretation" that SharkNinja's assault on iRobot's products was meant to "lower [them] in rank and estimation" or, in context, would be considered "speak[ing] slightingly of" iRobot and its products. And it appears iRobot is prepared to marshal evidence probative of lost sales, diminished goodwill, reputational harm and depreciated market share.[68] A measurable decrease in margin and desirability usually signals devaluation.

Too, by suggesting iRobot's products are overpriced, SharkNinja allegedly has spoken (at least) "slightingly of" them.[69] If iRobot's clients are told the Roomba is unjustifiably expensive, then they might reallocate their investments and pursue more cost-effective options (*e.g.*, the Shark IQ). Accordingly, because liability (and injury) need only be a "possibility" or "roughly sketche[d]" to activate the duty to defend, SharkNinja's alleged "disparage[ment] [of] . . . [iRobot's] products" plainly summons a defense.[70]

---

[67] *Bos. Symphony*, 545 N.E.2d at 1159 (internal quotation marks omitted).

[68] *iRobot* SAC ¶ 21.

[69] *Bos. Symphony*, 545 N.E.2d at 1159 (internal quotation marks omitted); *iRobot* SAC ¶¶ 20, 41.

[70] *Vibram*, 106 N.E.3d at 577 (internal quotation marks omitted); Definitions, § 14(d).

For the sake of completeness, coverage also attaches from the "use of another's advertising idea" injury alleged.[71] The Supreme Judicial Court of Massachusetts construed the same phrase in *Vibram*. After considering an array of definitions, the court observed the term "advertising idea" encompasses myriad meanings, including: "an idea about the solicitation of business and customers;" "ideas in connection with marketing and sales and for the purpose of gaining customers;" and "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales. . . ."[72] Ultimately, the court held the insurer had a duty to defend Vibram because the complaint generally alleged an intentional "connection between" Vibram's and the underlying plaintiff's marketing strategies designed "to attract customers" or to promote a "business venture."[73]

Here, iRobot provides a line-item chart detailing the ways in which SharkNinja "mimic[ked]" iRobot's marketing claims about the Roomba's "selected cleaning" and "recharge/resume" features to influence purchasing decisions.[74] This is no "rough[] sketch[]" of using another's advertising idea—it's a well-drawn illustration.

---

[71]   Definitions § 5.14(f).

[72]   *Vibram*, 106 N.E.3d at 578; *see id.* at 578-80 (collecting cases).

[73]   *Id.* at 580-81 (citations omitted).

[74]   *iRobot* SAC ¶¶ 38-39.

The allegations clearly limn the "possibility" that SharkNinja achieved Shark IQ's success by connecting iRobot's advertising ideas to its own for the purpose of attracting customers and diverting gains from iRobot.[75]  And because personal and advertising injury largely revolves around commercial advertisements, the Court "envisag[es]" that defense coverage for losses incurred from SharkNinja's allegedly improper sales tactics is "reasonably generated by the terms of the" Policies.[76] Accordingly, "use of another's advertising idea" paves a second path to Indian Harbor's duty to defend.

To avoid coverage, Indian Harbor suggests alternate reads of the Polices' plain language.[77]  But even if one were to entertain Indian Harbor's stunted constructions, coverage would still lie.  "Where the language permits more than one rational interpretation, that most favorable to the insured is to be taken."[78]  Indeed, Massachusetts courts routinely reject narrow, insurer-preferred interpretations of

---

[75]  *Vibram*, 106 N.E.3d at 577.

[76]  *Id.* (internal quotation marks omitted); *see Morrison*, 951 N.E.2d at 668.

[77]  Indian Harbor Ans. Br. at 19-33 (D.I. 37).

[78]  *Bos. Symphony*, 545 N.E.2d at 1159 (internal quotation marks omitted); *see Makrigiannis v. Nintendo of Am., Inc.*, 815 N.E.2d 1066, 1071 (Mass. 2004) ("[W]here there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." (internal quotation marks omitted)).

undefined policy terms that would winnow broad defense coverage.[79] Moreover,

iRobot's failure to evoke more precise theories of relief or to draft more specific

allegations is of little concern.[80] As long as there are "general allegations" raising a

"possibility that the [personal and advertising injury] claim falls within insurance

coverage," any "uncertainty as to whether the pleadings . . . are reasonably susceptible"

to coverage is "resolved in favor of the insured."[81] Personal and advertising injury

coverage has been so resolved and Indian Harbor must defend SharkNinja unless these

specific types of personal and advertising injury are clearly excluded.[82]

---

[79] *See, e.g.*, *Vibram*, 106 N.E.3d at 580-81; *Golchin*, 993 N.E.2d at 690-91; *Makrigiannis*, 815 N.E.2d at 1071-72; *Bos. Symphony*, 545 N.E.2d at 1159-60; *Siebe, Inc. v. Louis M. Gerson Co.*, 908 N.E.2d 819, 829 (Mass. App. Ct. 2009); *see also* Indian Harbor Ans. Br. at 26-28 (imputing a common law tort requirement to terms that are rationally interpreted either to have no tort meaning at all, or at least both a tort and non-tort meaning).

[80] *Vibram*, 106 N.E.3d at 577 ("There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. Accordingly, a duty to defend does not turn on the specific cause of action enunciated by the pleader or require that the complaint mirror the policy's coverage language." (internal quotation marks and citations omitted)); *see Billings*, 936 N.E.2d at 414 (citing *Sterilite Corp. v. Cont'l Cas. Co.*, 458 N.E.2d 338, 341 (Mass. App. Ct. 1983)) (same).

[81] *Vibram*, 106 N.E.3d at 577 (internal quotation marks omitted).

[82] Because the Court has determined either "disparagement," "use of another's advertising idea," or both, mark the *iRobot* Action, consideration of the parties' arguments about "libel," "slander" or "slogans" is unnecessary. *See* Definitions §§ 5.14(d), (g).

### 2. *The Failure to Conform Exclusion Does Not Apply to iRobot's False Advertising Claim.*

Indian Harbor focuses almost exclusively on the Failure to Conform Exclusion. That Exclusion relieves Indian Harbor of its defense duties when "personal and advertising injury aris[es] out of the failure of goods, products or services to conform with any statement of quality or performance made in [SharkNinja's] 'advertisement.'"[83] Indian Harbor insists this Exclusion applies to the false advertising claim because, in its view: (1) the *iRobot* Action really is about SharkNinja's own products, not iRobot's products; and (2) the Exclusion bars a defense when the insured advertises falsely about its own products.[84] Indian Harbor hasn't carried its burden of demonstrating this Exclusion applies here.

*First*, Indian Harbor's exclusion arguments rest on the same faulty premise as its definitional arguments, *i.e.*, that the *iRobot* Action's general allegations of SharkNinja's wrongdoing are dispositive of defense coverage. As explained earlier, in Massachusetts even barebones accusations that might well be meritless trigger the broad duty to defend as long as there is a "possibility" of defense coverage "roughly sketche[d]."[85]

---

[83] Exclusions § 2(g).

[84] Indian Harbor Op. Br. at 13-24 (D.I. 31).

[85] *Vibram*, 106 N.E.3d at 577 (internal quotation marks omitted).

*Second*, Indian Harbor's reading of the *iRobot* Action's complaint is too selective. For example, iRobot alleges SharkNinja made "false statements about its—and iRobot's—vacuums [to] deceive consumers about the performance and capabilities of these products."[86] These acts, among others, allegedly have harmed iRobot's reputation.[87] The natural read of iRobot's complaint is that SharkNinja crafted its advertising to inflate perception of the Shark IQ not only by extolling its own qualities, but also by discrediting iRobot's products and pricing. So, while some allegations do concern representations of SharkNinja's products, some others do concern iRobot's products. And any "uncertainty as to whether the pleadings" in the *iRobot* Action "are reasonably susceptible" to coverage for the iRobot-products aspects must be "resolved in favor of" SharkNinja consistent with the broad duty to defend.[88]

Finally, a strict construction of the Exclusion, when conducted in context of the whole contract,[89] simply does not support Indian Harbor's strained interpretation. Even if the Exclusion were construed strictly to bar a defense whenever SharkNinja makes

---

[86] *iRobot* SAC ¶ 21. Indian Harbor dismisses this allegation's importance. *See, e.g.*, Indian Harbor Op. Br. at 19-21. But there it is—an express accusation in iRobot's complaint that is also incorporated elsewhere in iRobot's federal false advertising count. *See iRobot* SAC ¶ 115.

[87] *iRobot* SAC ¶ 21.

[88] *Vibram*, 106 N.E.3d at 576-77 (internal quotation marks omitted).

[89] *See id.*; *Visionaid, Inc.*, 76 N.E.3d at 208; *Golchin*, 993 N.E.2d at 687.

non-conforming "statements" in "advertisements" about its own products, the language cannot be fairly read also to bar coverage whenever SharkNinja couples those with misleading or disparaging statements about a competitor's products. Otherwise, much of the personal and advertising injury coverage would be nullified—a result clearly contrary to SharkNinja's reasonable expectations.[90] To push its read, Indian Harbor resorts to non-Massachusetts case law glossing similar exclusions.[91] But this Court can neither ignore binding Massachusetts authority nor insert barriers the Policies omit.[92]

### 3. *The IP Infringement Exclusion Does Not Bar a Defense Against the Entire* **iRobot** *Action.*

In a last attempt to resist its duty to defend, Indian Harbor points to the IP Infringement Exclusion. It contends that provision plainly excludes any defense against the patent infringement claims.[93] Perhaps—but no matter. "[T]he general rule in Massachusetts in the general liability insurance context is that the insurer must defend

---

[90] *See Vibram*, 106 N.E.3d at 577 (noting contract interpretation should mind the insured's "objectively reasonable" expectations); *see also* Definitions § 5.1(d) (covering "slander" and "libel" of an organization's "products").

[91] *See, e.g.*, Indian Harbor Ans. Br. at 8-10 (citing cases from California, Georgia, New York, Virginia and North Carolina).

[92] *Gamache*, 675 N.E.2d at 444 (requiring strict construction of exclusions), *aff'd*, 686 N.E.2d 989; *see Makrigiannis*, 815 N.E.2d at 1070 (noting that insurer "could have expressly stated . . . an exclusion" that matched its preferred reading, but ostensibly chose not to (citing *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 616 N.E.2d 68, 71 (Mass. 1993))).

[93] *See* Exclusions § 2(i).

the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint."[94]  In other words, Indian Harbor must defend against the patent infringement counts—even if it normally wouldn't—because it must defend against the false advertising count.  Accordingly, neither this Exclusion nor the other excuses Indian Harbor from defending against the entire *iRobot* Action.[95]

## V. CONCLUSION

For the foregoing reasons, Indian Harbor's motion is **DENIED** and SharkNinja's motion is **GRANTED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*

Paul R. Wallace, Judge

cc: All Counsel via File and Serve

---

[94]  *GMAC Mortgage, LLC v. First Am. Title Ins. Co.*, 985 N.E.2d 823, 828 (Mass. 2013) (internal quotation marks omitted).

[95]  *See Simplex Techs., Inc. v. Liberty Mut. Ins. Co.*, 706 N.E.2d 1135, 1137 (Mass. 1999) (expounding the "in for one, in for all" principle guiding defense duties).