465 Mass. 741 (2013)                    741

Deutsche Bank National Association *v.* First American Title Insurance Company.

# Deutsche Bank National Association,[1] trustee,[2] *vs.* First American Title Insurance Company.

Suffolk. March 7, 2013. - July 11, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Insurance,* Title insurance, Insurer's obligation to defend. *Real Property,* Title insurance.

Discussion of the obligation of the issuer of a title insurance policy to defend an insured only where the policy specifically envisions the type of loss alleged. [744-747]

In a civil action brought by a bank seeking a judgment declaring that the insurer that issued a title insurance policy had an obligation to defend the bank in an action seeking rescission of a note and a first mortgage securing that note, the judge properly granted summary judgment in favor of the insurer, where the claims in the underlying action (i.e, whether the underlying loan was valid and whether it was procured by a predatory lending scheme, not whether the mortgage was improperly executed, improperly recorded, or otherwise procured by fraud) were not specifically envisioned by the terms of the title insurance policy, and where the request for rescission of the security interest was only a collateral consequence of the main relief sought, i.e., voiding the loan indebtedness. [747-751]

Civil action commenced in the Superior Court Department on December 11, 2009.

The case was heard by *S. Jane Haggerty*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard E. Briansky* (*Jeffrey J. Pyle* with him) for the plaintiff.

*Jason A. Manekas* for the defendant.

Cordy, J. In the present appeal, we consider whether the

---

[1]In its complaint against First American Title Insurance Company (First American), the plaintiff (Deutsche Bank) was named as "Deutsche Bank National Association." However, the trustee of the trust is in fact "Deutsche Bank National Trust Company."

[2]Of the Morgan Stanley IXIS Real Estate Capital Trust 2006-2.

terms of a title insurance policy require First American Title Insurance Company (First American) to defend Deutsche Bank National Association (Deutsche Bank) in a lawsuit brought by a third party, Karla Brown,[3] seeking rescission of a note and first mortgage securing that note, originated by Deutsche Bank's predecessor in interest in connection with the purchase of Brown's home. Following First American's denial of coverage, Deutsche Bank instituted this action seeking a judgment declaring that First American has a duty to defend it in Brown's lawsuit and seeking statutory damages. We transferred the case here on our own motion following Deutsche Bank's appeal from a Superior Court judge's order granting summary judgment in favor of First American.

On appeal, Deutsche Bank argues that the policy is susceptible to an interpretation that it covers the claims alleged in Brown's complaint and that two exclusions contained within the policy do not preclude coverage.[4] Based on these arguments, Deutsche Bank contends that First American is under a contractual duty to defend it in the Brown lawsuit. In addition, Deutsche Bank renews its claim for damages under G. L. c. 93A due to First American's alleged violation of G. L. c. 176D, § 3.[5] In response, First American argues that the allegations in Brown's complaint do not trigger its duty to defend because they relate to a predatory lending scheme concerning the validity of the underlying note and not the enforceability of Deutsche Bank's mortgage interest. Alternatively, First American argues that it

---

[3]The underlying lawsuit also names the following defendants: Accredited Home Lenders, Inc. (Accredited); GMAC Mortgage Corp.; HSBC Mortgage Services, Inc.; Saxon Mortgage Services, Inc.; Phillip Brown; and Barrando Butler.

[4]Exclusion 3(a) excludes from coverage "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant." Exclusion 5 excludes from coverage any matter that involves the "[i]nvalidity or enforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law." Because we decide this matter based on the fact that the allegations in Brown's complaint are outside the scope of the coverage provided by the title insurance policy, we do not address the applicability of Exclusion 3(a) or Exclusion 5.

[5]Because we conclude that First American did not have a duty to defend, we reject Deutsche Bank's claim for damages.

need not defend Deutsche Bank because Brown's claims are excluded by the policy. For the reasons discussed below, we conclude that the allegations in Brown's complaint did not trigger First American's duty to defend under its title insurance policy, and therefore we affirm the judge's grant of summary judgment.

*Background.* On June 6, 2006, Accredited Home Lenders, Inc. (Accredited), issued a loan, secured by a first mortgage, to Brown in the amount of $374,400 to purchase her home in the Dorchester section of Boston. Prior to the closing on Brown's home, Accredited purchased a title insurance policy from First American, which provided coverage to Accredited and its successors and assigns.[6] Thereafter, Accredited sold Brown's loan and mortgage to Morgan Stanley ABS Capital Incorporated, which then assigned the loan and mortgage to the Morgan Stanley IXIS Real Estate Capital Trust 2006-2, of which Deutsche Bank is the trustee. As trustee, Deutsche Bank is covered by the title insurance policy, a fact that is undisputed by the parties in the present appeal.

In May, 2009, Brown filed an action against Accredited; Deutsche Bank; Saxon Mortgage Services, Inc., the loan servicer; HSBC Mortgage Service, Inc., the servicer of a second loan; GMAC Mortgage Corp., the mortgage broker; Philip Brown, the mortgage broker's agent; and Barrando Butler, the closing attorney, seeking to void the indebtedness under the promissory note and rescind the mortgage.[7] Her complaint asserts claims for misrepresentation; unconscionability; breach of the duty of good faith and fair dealing; tortious interference with contract; violations of G. L. c. 183, § 63; legal malpractice; intentional infliction of emotional distress; and violations of G. L. c. 93A.[8] In support of her request for relief, Brown

---

[6]Accredited also issued a second loan, secured by a second mortgage, to Brown in the amount of $93,600. The title insurance policy issued by First American to Accredited does not cover this second mortgage and, therefore, is not at issue in the present litigation.

[7]In her complaint, Karla Brown also seeks "actual, statutory, consequential and punitive damages, costs, fees and other necessary relief."

[8]The Superior Court judge subsequently dismissed the legal malpractice and G. L. c. 93A claims against Deutsche Bank in the Brown lawsuit, but maintained that because Brown sought to rescind the note held by Deutsche Bank, it remained a "necessary party for the equitable remedy of rescission."

alleges that she was "the victim of a predatory lending scheme," perpetrated by the named defendants, which involved "underwriting predatory 'stated income' loans to families in low-income neighborhoods." She further alleges that the defendants "unilaterally misrepresented [Brown's] income to justify higher interest rates and higher monthly payments" and coerced her into accepting loans that she could not afford.

Following the institution of Brown's lawsuit, Deutsche Bank contacted First American to provide notice of the lawsuit and to request that it defend Deutsche Bank's mortgage interest pursuant to the terms of the title insurance policy.[9] First American refused coverage because "Brown does not challenge that she granted the mortgage, rather she claims that she was misinformed as to the terms of the note," and thus the lawsuit did not trigger its duty to defend.

*Discussion.* 1. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). There are no material factual disputes in this case, and the only issue is the interpretation of the title insurance policy, which is a question of law that we review de novo. *Chenard* v. *Commerce Ins. Co.*, 440 Mass. 444, 445 (2003).

2. *The scope of a title insurer's duty to defend.* The determinative issue is whether the allegations set forth in Brown's complaint trigger First American's duty to defend under the terms of the title insurance policy.

In Massachusetts, a general liability insurer has a broad duty to defend an insured in litigation. *GMAC Mtge., LLC* v. *First Am. Title Ins. Co.*, 464 Mass. 733, 738 (2013) (*GMAC Mtge.*). See *Metropolitan Prop. & Cas. Ins. Co.* v. *Morrison*, 460 Mass. 352, 357 (2011) (*Metropolitan*), quoting *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 527 (2005). A liability insurer's duty to defend is determined by

---

[9]The record shows that Deutsche Bank sent two written requests to First American, the first dated October 29, 2009, and the second dated November 20, 2009.

comparing the allegations in the third-party complaint against the provisions of the insurance policy. See *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984) (*Continental*). See also *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 197 (1999). "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer *must* undertake the defense" (emphasis added). *Continental, supra,* quoting *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983). See *Billings* v. *Commerce Ins. Co.*, 458 Mass. 194, 200 (2010) (*Billings*), citing *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 796 (2000). Any uncertainty as to whether the pleadings include or are reasonably susceptible to an interpretation that they include a claim covered by the policy terms is resolved in favor of the insured, and the insurer must undertake the defense until it obtains a declaratory judgment of no coverage. *Metropolitan, supra* at 358-359.[10]

In the present dispute, the parties assume that this standard for determining a general liability insurer's duty to defend is equally applicable in the context of title insurance. Because this bears on the outcome of the dispute, we take the opportunity to determine whether that assumption is correct.

Our analysis is guided by our recent decision in *GMAC Mtge.*, *supra.* There, we concluded that the "in for one, in for all" rule applicable in the context of general liability insurance does not

---

[10]A liability insurer's duty to defend is not limitless, however. There are instances "when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose, [and] the insurer is relieved of the duty to investigate' or defend the claimant." *Billings* v. *Commerce Ins. Co.*, 458 Mass. 194, 201 (2010) (*Billings*), quoting *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 394-395 (2003). There are also instances where, although the allegations in the complaint are susceptible to an interpretation that they are covered by the insurance policy, there is no duty to defend either because (1) "there is 'undisputed, readily knowable, and publicly available information' in court records that demonstrates that the insurer has no duty to defend," or (2) "there is 'an undisputed extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action.' " *Metropolitan Prop. & Cas. Ins. Co.* v. *Morrison*, 460 Mass. 352, 358 (2011) (*Metropolitan*), quoting *Billings, supra* at 200 n.8, 205. However, even if one of these latter exceptions applies, an insurer may still have a duty to defend, if another claim is covered by the policy. *GMAC Mtge., LLC* v. *First Am. Title Ins. Co.*, 464 Mass. 733, 738-739 (2013) (*GMAC Mtge.*).

apply to title insurance.[11] *Id.* at 739. That is, a title insurer *does not* have a duty to defend claims outside the scope of the title insurance policy simply because the insurer has an obligation to defend a claim that is covered by the policy. *Id.* Significantly, our conclusion was predicated on the unique purpose of title insurance as compared to general liability insurance. *Id.* at 740. As we explained, "[A] title insurance policy is not an agreement to guarantee or a warranty of the state of the title. . . . It is, rather, an agreement to indemnify the policyholder . . . against loss through defects in title." *Id.* at 739, quoting B. Burke, Title Insurance § 2.01[A], at 2-5 (3d ed. Supp. 2012). "[It] narrowly covers defects in, or encumbrances on, titles that are in existence when a policy issues." *GMAC Mtge., supra* at 740, citing B. Burke, Title Insurance § 2.01[C], at 2-22 to 2-22.1 (3d ed. Supp. 2008). In light of this purpose, we stressed that title insurance is "fundamentally different" from general liability insurance, see *id.*, citing B. Burke, Title Insurance § 2.01[B], at 2-16 (3d ed. Supp. 2011), which is "directed at future risks,"[12] see *id.*, quoting B. Burke, Title Insurance § 2.01[C], at 2-22 (3d ed. Supp. 2008).

Based on our reasoning in *GMAC Mtge., supra,* and the limited purpose of title insurance, we conclude that the broadly applied standard for determining whether a general liability insurer has a duty to defend is inapplicable in the context of title insurance. More precisely, a title insurer *does not* have a duty to defend simply because the allegations in the underlying complaint are " 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Continental, supra* at 146, quoting *Sterilite Corp.* v. *Continental Cas. Co., supra* at 318, and citing *Vappi & Co.* v. *Aetna Casualty Co.,* 348 Mass. 427, 431 (1965). Application of this standard

---

[11]In the context of general liability insurance in Massachusetts, the "in for one, in for all" rule states that "an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint." *GMAC Mtge., supra* at 738, quoting *Liberty Mut. Ins. Co.* v. *Metropolitan Life Ins. Co.,* 260 F.3d 54, 63 (1st Cir. 2001).

[12]Given that title insurance is concerned solely with "defects in, or encumbrances on, titles that are in existence when a policy issues, title insurers attempt to eliminate or reduce risks prior to the issuance of a title insurance policy." *GMAC Mtge., supra* at 740, citing B. Burke, Title Insurance § 2.01[C], at 2-22 to 2-22.1 (3d ed. Supp. 2008).

threatens to sweep a whole host of uncontemplated risks into the ambit of title insurance. See *GMAC Mtge., supra* at 740-741. To avoid such an aberration, we conclude that a title insurer's duty to defend is triggered only where the policy specifically envisions the type of loss alleged. See *Billings, supra* at 201, quoting *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 394-395 (2003) ("when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its *purpose*, the insurer is relieved of the duty to investigate' or defend the claimant" [emphasis added]). See also *Bank of Miami Beach* v. *Fidelity & Cas. Co. of N.Y.*, 239 So. 2d 97, 99 (Fla. 1970) (holding that in order for claim to be within scope of coverage of title insurance policy, it must be "specifically" provided for); *Pacific Am. Constr.* v. *Security Union Title*, 987 P.2d 45, 47-48 (Utah 1999) (*Pacific Am.*) (losses sustained "did not result from a failure of the insured lien; they resulted instead from the failure of the underlying debt"). Cf. *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 430 (1995) ("title insurance company's duty to the insured is governed by the terms of the policy").

3. *First American's duty to defend.* With this standard in mind, we turn to whether the terms of the title insurance policy specifically envision the type of claims and loss set forth in Brown's complaint. Deutsche Bank argues that the policy provides coverage insofar as the complaint asserts that "the entire mortgage transaction — note and mortgage included — is voidable because of fraud in the inducement" and seeks to "rescind the security interest." In response, First American argues that the policy does not extend coverage because Brown's action concerns the invalidity or unenforceability of a third party's underlying mortgage debt, rather than the security interest. Resolution of the issue requires that we compare the terms of the policy against the allegations in the complaint. See *Continental, supra* at 146.

We begin by ascertaining the scope of the insurance policy. "The interpretation of language in an insurance contract 'is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary

sense.' " *Metropolitan, supra* at 362, quoting *Boston Gas Co.* v. *Century Indem. Co.*, 454 Mass. 337, 355 (2009) (*Boston Gas*). "Every word . . . 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.' " *Metropolitan, supra,* quoting *Boston Gas, supra.* If the meaning of the contract language is unclear, we "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Metropolitan, supra,* quoting *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 518 (2005).

Here, the pertinent provision of the title insurance policy provides coverage against "loss or damage . . . sustained or incurred by the insured by reason of . . . [t]he invalidity or unenforceability of the lien of the insured mortgage upon the title." This statement of coverage is expressly subject to the policy's "Conditions and Stipulations," which state, in relevant part, that First American "shall provide for the defense of [Deutsche Bank] in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against . . . ."[13] These unambiguous provisions are consistent with the limited purpose of title insurance discussed above, namely to provide "protection against defects in, or liens or encumbrances on, *title*" (emphasis added). *Somerset Sav. Bank* v. *Chicago Title Ins. Co., supra* at 428. Accord *Private Lending & Purch., Inc.* v. *First Am. Title Ins. Co.*, 54 Mass. App. Ct. 532, 536 (2002).

In contrast to the protections of the policy, all eight counts in Brown's complaint are marshaled around her contention that the underlying debt should be voided because she was the "victim of a predatory lending scheme" perpetrated by the defendants.[14]

---

[13] We read the phrase "other matter[s] insured against" as referring to the other items of coverage enumerated in the general statement of coverage, none of which is relevant to the current lawsuit.

[14] Although Brown uses the terms "loan" and "mortgage" interchangeably throughout her complaint, the substitution has no substantive effect on the nature of her action. It is clear from context that Brown frequently uses the word "mortgage" in the colloquial sense to refer to the underlying loan, not the security interest.

465 Mass. 741 (2013)                                    749

Deutsche Bank National Association *v.* First American Title Insurance Company.

Count 1 asserts that the defendants "knowingly or negligently misrepresented material facts of the loan transaction"; count 2 asserts that disparity in bargaining power resulted in "unconscionable loans"; count 3 asserts that the defendant committed a breach of its duty of good faith and fair dealing by "refusing to modify the loan"; count 4 asserts that GMAC and Philip Brown tortiously interfered with the loan contract; count 5 asserts that GMAC and Philip Brown received an undisclosed loan fee due to falsification of Brown's income; count 6 asserts legal malpractice against Butler because he incorrectly advised Brown that she "qualified for a loan" and "failed to review the loan documents"; count 7 asserts that the defendants' predatory scheme caused Brown emotional distress; and count 8 asserts that the transaction was unfair and deceptive because the defendants coerced Brown into accepting an "unaffordable loan." The substance of her complaint is thus plainly an attack on the underlying debt. Even so, following each count, Brown states that she is entitled to "*rescind the security interest,* void the loan indebtedness and recover actual, consequential, statutory and punitive damages, costs and attorney's fees" (emphasis added).

In her order granting summary judgment in favor of First American, the judge concluded that Brown's complaint did not trigger First American's duty to defend because "Brown asserts defects with the underlying mortgage debt . . . rather than defects concerning the execution of the mortgage lien." In so concluding, the judge relied heavily on the Florida Supreme Court's reasoning in *Bank of Miami Beach* v. *Fidelity & Cas. Co. of N.Y.,* 239 So. 2d 97 (Fla. 1970). In that case, the court similarly held that a title insurer was not obligated to defend a third-party lawsuit challenging the validity of the promissory note on the basis that it was procured by fraud. *Id.* at 98-99. In support of its conclusion, the court drew an important distinction between a mortgage lien and a mortgage debt:

> "[A] mortgage lien and a mortgage debt are two entirely different legal concepts or 'species.' A provision guaranteeing that the mortgage constituted a 'valid mortgage lien' might be held to cover a loss resulting from fraud, mistake, duress, or misrepresentation in the procurement of the

mortgage — a point that is not presented nor decided here; but such a guarantee of the validity of the mortgage lien cannot and should not be construed as guaranteeing that the insuror has made a careful investigation of the origin of the mortgage debt and guarantees its payment or validity. If such coverage is contemplated, the policy should specifically so provide."

*Id.* at 99. Other courts have also adopted this distinction and held that title insurance does not cover defects in the underlying note. See, e.g., *Lawyers Title Ins. Corp.* v. *JDC (Am.) Corp.*, 52 F.3d 1575, 1583 (11th Cir. 1995) ("Generally stated, the provision [at issue] insures against defects in the mortgage itself, but not against problems arising from or related to the underlying debt"); *Pacific Am.*, *supra* at 47 (losses sustained "did not result from a failure of the insured lien; they resulted instead from the failure of the underlying debt claim"). See also *First Am. Title Ins. Co.* v. *XWarehouse Lending Corp.*, 177 Cal. App. 4th 106, 117-118 (2009). We find this authority persuasive.

Where the substance of Brown's complaint is concerned with the validity of the underlying loan and whether it was procured by a "predatory lending scheme," not whether the mortgage was improperly executed, improperly recorded, or otherwise procured by fraud,[15] we conclude that its claims were *not* specifically envisioned by the terms of the title insurance policy. Consequently, the allegations of the complaint fall outside the scope of the policy. See, e.g., *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 428 (1995).

We also agree with First American that Brown's attempt to "rescind the security interest" is only a collateral consequence of the main relief sought, voiding the loan indebtedness. We are aware that, if Brown prevails and her underlying debt is extinguished, this would have the practical effect of dissolving Deutsche Bank's mortgage interest, insofar as there would be

---

[15]We do not construe the complaint to allege that the mortgage instrument itself was forged or that its execution was the product of fraud. Assuming such a claim had been made in the present dispute, it might have been specifically excluded by Exclusion 3(a), which denies coverage to defects created by the insured.

no debt to secure. However, given that Deutsche Bank and its predecessors in interest, rather than First American, were in the best position to ensure that the underlying debt was valid, it is for them to bear the burden of any loss. It would be unreasonable to expect First American to "insure a debt about which it typically would have only limited knowledge and over which the lender would have sole control." *Pacific Am., supra* at 47-48. Where, as here, the claims asserted and the losses alleged are not of the type specifically envisioned by the policy, they fall outside the scope of its coverage, and First American does not have a duty to defend Deutsche Bank in the Brown lawsuit.

*Judgment affirmed.*