SUPERIOR COURT 
 
 MASSACHUSETTS GAMING COMMISSION v. LANDMARK AMERICAN INSURANCE COMPANY

 
 Docket:
 2084CV02332-BLS2
 
 
 Dates:
 February 25, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON DEFENDANT’S MOTION TO DISMISS
 
 

 This action concerns the scope of Landmark American Insurance Company’s duty to defend the Massachusetts Gaming Commission against a lawsuit by FBT Everett Realty LLC. For a time, Landmark paid the Commission’s defense costs under a reservation of rights. But, after a Superior Court judge dismissed FBT’s claim for intentional interference with contractual relations, Landmark took the position that there was no potential coverage for the one remaining claim and that it no longer had any duty to defend the Commission.
The Commission contends that Landmark breached its contractual duty by cutting off payment of defense costs after the interference claim was dismissed. It seeks declaratory relief, compensatory damages, and attorneys’ fees.
Landmark has moved to dismiss this action under Mass. R. Civ. P. 12(b)(6), arguing that the Commission’s complaint does not state any claim upon which relief can be granted.
The Court concludes that Landmark’s duty to defend the Commission continued until the Massachusetts Supreme Judicial Court (the “SJC”) affirmed the dismissal of FBT’s intentional interference claim. Before then, the interference claim continued to trigger Landmark’s duty to defend because there remained a chance that the Commission could be held liable on that theory. The facts alleged in the Commission’s complaint plausibly suggest that Landmark breached its contractual obligations by ending its defense long before the SJC’s final appellate decision on the intentional tort claim, and without first obtaining a declaration that its duty to defend had terminated.
But once the SJC issued its decision, the interference claim could no longer trigger any duty to defend because it had become clear that the Commission was immune from liability for intentional torts, and the sole remaining claim for a regulatory taking did not continue to trigger any duty to defend because it fell within an express exclusion of coverage provision. Landmark’s duty to
 
                                                            -1-
 
defend ended as a matter of law once there was a final decision by the SJC that FBT cannot sue the Commission for an intentional tort.
The Court will therefore deny in part Landmark’s motion to dismiss the complaint to the extent the Commission alleges that Landmark breached its contractual duty to defend the underlying action before the SJC issued its decision in this case on May 23, 2022, and is liable for attorneys’ fees and costs that the Commission incurred in bringing this action. It will allow in part the motion to dismiss with respect to any claim that Landmark continued to breach its duty to defend after that date.
1. Factual Background. The following factual background is alleged in the Commission’s complaint in this action, established by documents referenced in the Commission’s complaint, or established by the docket and documents filed in the underlying lawsuit by FBT against the Commission (the “FBT Action”).[1] The parties agree that in deciding Landmark’s motion the Court may consider docket entries in the civil action filed by FBT.[2]
1.1. Landmark’s Policy. Landmark issued a Directors and Officers Liability Policy to the Commission that provides liability insurance coverage for covered claims asserted from September 11, 2015, to December 11, 2016. Under this Policy, Landmark also has a duty to defend against potentially covered claims.[3]
 
--------------------------------------------
 
[1] FBT filed the underlying action in Suffolk County in November 2016; it was docketed as FBT Everett Realty, LLC v. Massachusetts Gaming Commission, Suffolk Superior Court civil action no. 1684CV03481-BLS1. In January 2018, at the request of FBT, Chief Justice Fabricant transferred the FBT Action to Middlesex County and specially assigned Judge Mitchell Kaplan (who had been handling the case in the BLS) to continue to hear the case. The case was redocketed as Middlesex Superior Court civil action 1881CV00304-B. When Judge Kaplan retired, in May 2020, Chief Justice Fabricant specially assigned Judge Salinger to hear the case.
[2] A judge may take judicial notice of the records in a related judicial action when deciding a motion for judgment on the pleadings under Mass. R. Civ. P. Rule 12(c) or a motion to dismiss under Rule 12(b)(6). Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (motion for judgment on the pleadings); Reliance Ins. Co. v. City of Boston, 71 Mass. App. Ct. 550, 555 (2008) (motion to dismiss).
[3] The Court may consider the Policy because the Commission refers to it in its complaint. See Lanier v. President and Fellows of Harvard College, 490 Mass. 37, 44 (2022)  (in  deciding  motion  to  dismiss,  court  may  consider  documents
<continued…>
 
                                                            -2-
 
Exclusion 12 of the Policy—which was added by and can be found in an endorsement titled “Coverage Extension–Public Officials”—provides that Landmark is not liable to make payment for any Loss in connection with any Claim “[a]lleging, arising out of, based upon, or attributable to inverse condemnation, temporary or permanent taking, adverse possession or dedication by adverse use.”
1.2. FBT’S Lawsuit and Landmark’s Tendering of a Defense. FBT filed its lawsuit against the Commission in November 2016, during the period covered by the Policy.
FBT alleged the following background facts in its original complaint in the FBT Action against the Commission. FBT had originally contracted to give Wynn MA, LLC, an option to purchase FBT’s Everett property for $75 million if Wynn received a casino license. But staff in the Commission’s Investigations and Enforcement Bureau (“IEB”) learned that a convicted felon may have had an indirect ownership interest in FBT, which prompted the IEB to conduct an extensive investigation. Based on that investigation, “the IEB intentionally embarked on a course of conduct designed to prevent FBT from receiving any casino-related profit from its contract with Wynn Resorts.” Wynn hired an appraiser that estimated the property was worth only $35 million if no casino could be built. Wynn then “acceded to the IEB’s threats and preferences” by telling FBT that if it did not accept a $40 million price cut then the Commission would not grant Wynn a casino license and Wynn would sue FBT. As a result, “FBT was forced to accept $40 million less than the original contract provided for the Everett Parcel.”
Wynn MA, LLC, ultimately built the Encore Boston Harbor resort casino in Everett, Massachusetts, on land that it bought from FBT for $35 million. [4]
 
--------------------------------------------
 
referenced in complaint); see also John Moriarty & Assocs., Inc. v. Zurich Am. Ins.
Co., 102 Mass. App. Ct. 474, 476 n.1 (2023) (considering insurance policy referenced in complaint and attached to insurer’s motion to dismiss lawsuit alleging breach of duty to defend).
[4] The Court takes judicial notice of these facts, even though they are not  expressly alleged in FBT’s complaint against the Commission, because they are now a matter of public record. See FBT Everett Realty, LLC v Massachusetts Gaming Commission, 489 Mass. 702, 706–707 (2022) (Wynn bought Everett property from FBT after Commission approved its application for a casino
<continued…>
 
                                                            -3-
 
FBT’s original complaint against the Commission asserted a claim of tortious interference. It alleged that the Commission intentionally interfered with the option contract between FBT and Wynn “by knowingly inducing Wynn Resorts and effectively forcing FBT to renegotiate a new purchase price for the Everett Parcel.” FBT further alleged that the Commission “used improper means or motive” to do so.
About three months after FBT filed its lawsuit against the Commission, Landmark acknowledged having received timely notice of FBT’s claim and informed the Commission that the FBT Action had triggered Landmark’s duty to defend. Landmark stated that it was expressly reserving “all of its rights, privileges and defendants available under the Policy, at law or in equity.”
Two months later, in early April 2017, the Commission filed a motion to dismiss the FBT Action. Judge Kaplan heard oral argument a few weeks thereafter.
FBT filed an amended complaint in late May 2017, while the motion to dismiss was under advisement. The factual allegations in the amended complaint were essentially identical to those in the original complaint. FBT added three new causes of action. Count II asserted a claim that the Commission had made a “per se taking” of property without providing compensation; Count III alleged that the Commission had made an uncompensated “regulatory taking” of property; and Count IV claimed that the Commission had unconstitutionally impaired FBT’s contract rights.
1.3. Superior Court Decisions and Landmark’s Withdrawal of Defense. A few days FBT filed its amended complaint, Judge Kaplan allowed the Commission’s motion to dismiss the original complaint. He concluded in his June 7, 2017, decision that the Commission is a “public employer” within the meaning of the Massachusetts Tort Claims Act and therefore was immune from suit for intentional interference with contractual relations.
The Commission then moved to dismiss the three new causes of action added by FBT’s Amended Complaint. Judge Kaplan decided that motion in May 2018. He allowed the motion to dismiss with respect to the per se taking and contract clause claims (Counts II and IV). He denied the motion to dismiss the regulatory taking claim (Count III). And Judge Kaplan reiterated that he had already dismissed the tortious interference claim (Count I).
 
--------------------------------------------
 
license); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (court may consider “matters of public record” in deciding rule 12(b)(6) motion to dismiss).
 
                                                            -4-
 
Ten days later, Landmark informed the Commission that it would no longer provide or pay for a defense to the FBT Action, effective as of May 14, 2018 (the date of Judge Kaplan’s most recent decision). Landmark took the position that the only cause of action remaining in the FBT Action was the claim for a regulatory taking of property, the Policy exclusion for “inverse condemnation” claims barred any coverage for that claim, and therefore Landmark no longer had any continuing duty to defend the Commission.[5]
In June 2021, this Court (Salinger, J.) granted summary judgment in the Commission’s favor on the regulatory taking claim because it concluded that FBT cannot prove that the Commission made a regulatory taking of a property right by interfering with reasonable investment-backed expectations.
1.4. The Supreme Judicial Court’s Decision. After final judgment entered in the FBT Action, FBT appealed from the dismissal of its intentional interference claim and the grant of summary judgment on its regulatory taking claim, but did not challenge the dismissal of its per se taking and contract clause claims. See FBT Everett Realty, LLC v Massachusetts Gaming Commission, 489 Mass. 702, 708 (2022). The SJC issued its decision as to FBT’s appeal on May 23, 2022.
The SJC affirmed the dismissal of the intentional interference claim. It agreed that the Commission is a “public employer” within the meaning of the Massachusetts Tort Claims Act and therefore is immune from “liability for
 
--------------------------------------------
 
[5] Landmark asserts in its memorandum that in July 2021, after FBT filed a notice of appeal from the entry of the original final judgment on all claims, Landmark resumed advancing the Commission’s defense costs while the appeal was pending. At oral argument Landmark clarified this assertion, representing that it paid the Commission’s legal fees for the appeal but refused to pay costs incurred to litigate FBT’s regulatory taking claim in Superior Court.
The Court may not consider these representations in deciding Landmark’s motion to dismiss because they are not alleged in the Commission’s complaint, and are not matters as to which the Court may take judicial notice. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992) (materials outside the pleadings generally may not be considered in reviewing rule 12(b)(6) motion); Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC, 84 Mass. App. Ct. 75, 91, rev. denied, 466 Mass. 1106 (2013) (in deciding rule 12(b)(6) motion, as in other contexts, “[m]atters are judicially noticed only when they are indisputably true”) (quoting Nantucket v. Beinecke, 379 Mass. 345, 352 (1979)).
 
                                                            -5-
 
intentional tort claims, including claims for intentional interference with contractual relations.” Id. at 723.
However, the SJC reversed the grant of summary judgment as to the regulatory taking claim. It agreed with the Court’s ruling that the Commission’s alleged role in pressuring FBT to accept a $40 million price cut did not interfere with any reasonable investment-backed expectations, but held that the Court erred in granting summary judgment without also considering the character of the Commission’s actions (if any) and the economic impact of those actions on FBT. See FBT Everett Realty, 489 Mass. at 703 & 709–713.
Thus, after the SJC’s ruling, the only claim remaining in the FBT Action was the count alleging that the Commission had made an uncompensated regulatory taking of part of FBT’s property rights.
1.5. Proceedings after Remand. In December 2024, after additional discovery, this Court (Salinger, J.) again granted summary judgment in the Commission’s favor on the regulatory taking claim.
The Court explained that, although “there is evidence suggesting that IEB staff made clear to Wynn that its application would fail unless it could convince FBT to agree to reduce the property’s purchase price to eliminate any casino premium,” the summary judgment record established that “the Commission was not aware of and had no involvement in those efforts by IEB staff.” It concluded that “[n]o urging by IEB staff to eliminate any casino-related premium from the price to be paid to FBT could constitute a regulatory taking because it did not constitute final action by the Commission.”
The Court ruled that “[t]he evidence obtained during discovery establishes that the Commission had nothing to do with pressuring or convincing FBT to sell the property at a lower price, therefore no action by the Commission had any adverse economic impact on FBT, and (as previously established) the price reduction did not interfere with any reasonable investment-backed expectations by FBT. All three of these factors weigh heavily against finding that the Commission did anything that constitutes a regulatory taking of FBT’s property interests.”
A single justice of the Appeals Court declined to refer FBT’s interlocutory appeal from this decision to a panel of three judges.[6]
 
--------------------------------------------
 
[6]        See Massachusetts Appeals Court docket 2025-J-0018, order dated 01/24/2025.
 
                                                            -6-
 
Although all of FBT’s claims against the Commission have now been resolved in the Commission’s favor, the FBT Action is still pending with respect to additional claims that FBT is asserting against Wynn.
2. Legal Background. The following legal principles govern Landmark’s potential duty to provide the Commission with a defense to the FBT Action.
2.1. An Insurer’s Duty to Defend. A liability insurer’s duty to defend its insured “is independent from, and broader than, its duty to indemnify.” Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 480 Mass. 480, 483 (2018), quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 357 (2011).
A duty to defend “is triggered when the allegations in the complaint ‘are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms.’ “ Holyoke Mut., 480 Mass. at 484, quoting Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010). In other words, an “insurer has the duty to defend an insured against a lawsuit based merely on the potential of liability under a policy,” even though “the insurer could eventually be determined to have no duty to indemnify the insured.” Metropolitan, supra, at 358, quoting 14 G. Couch, Insurance § 200:3, at 200–9 (3d ed. 2005).
If any claim in the underlying action triggers a duty to defend, then “the insurer must defend the insured on all counts, including those that are not covered.” Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 477 Mass. 343, 351 (2017). This is known as the “in for one, in for all” rule, under which an insurer that has a duty to defend its insured on just one claim must provide a complete defense to the entire action. Mount Vernon, supra.
Whether an insurer is obligated to provide a defense must be determined, at least in the first instance, “by comparing the allegations in the third-party complaint against the provisions in the  insurance  policy.”  Holyoke  Mut.,  480 Mass. at 484, quoting Deutsche Bank Nat’l Ass’n v. First Am. Title Ins. Co., 465 Mass. 741, 744–745 (2013). If there is “a possibility that the liability claim falls within the insurance coverage,” then the duty to defend is triggered; “[t]here is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Id., quoting Billings, 458 Mass. at 200–201.
Any uncertainty about whether the underlying complaint includes a covered claim, and thus triggers the insurer’s duty to defend, must be “resolved in favor
 
                                                            -7-
 
of the insured, and the insurer must undertake the defense until it obtains a declaratory judgment of no coverage.” Deutsche Bank, 465 Mass. at 745.
Where an insurer and its insured disagree about whether there is a duty to defend, the insurer may provide a defense under a reservation of rights, file a declaratory judgment action to resolve whether it owes a duty to defend or indemnify, move to stay the underlying action in the meantime, and withdraw from the defense “if it obtains a declaration that it owes no duty to the insured.” Metropolitan, 460 Mass. at 358–359. “Where material facts as to the duty to indemnify are in dispute,” however, “an insurer has a duty to defend until the insurer establishes that no potential liability for coverage exists.” Id. at 359.
If an insured goes to court and shows that the insurer has breached its duty to defend, the insured is entitled to recover any reasonable attorneys’ fees and litigation expenses that it incurred to do so. See Hanover Ins. Co. v. Golden,   436 Mass. 584, 586–588 (2002); Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 98 (1997).
2.2. Exceptions. There are two “narrow exceptions” to the rule that the duty to defend is determined only by looking at the allegations in the underlying complaint. See Metropolitan, 460 Mass. at 358.
“Even where the allegations in the complaint state or roughly sketch a claim covered by a liability policy,” the insurer will nonetheless have no duty to keep defending the claim if: (1) “there is ‘undisputed, readily knowable, and publicly available information’ in court records that demonstrates that the insurer has no duty to defend,” Metropolitan, supra, quoting Billings, 458 Mass. at 205, or (2) “there is ‘an undisputed extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action, id., quoting Billings at 200 n.8. See also Deutsche Bank, 465 Mass. at 745 n.10 (reaffirming Metropolitan).[7]
 
--------------------------------------------
 
[7] Prior to Metropolitan, the Supreme Judicial Court had suggested more broadly that whether there is a duty to defend “is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint.” Billings,    458 Mass. at 200. But Metropolitan clarified, and Deutsche Bank confirmed, that Massachusetts permits consideration of facts outside the complaint—to determine whether an insurer has a duty to defend—only in the two narrow circumstances described above.
 
                                                            -8-
 
The “narrow exceptions” described above do not apply unless and until they have been proved in court and resolved with finality. If it seems possible on the face of the complaint that the insurance policy covers claims asserted against the insured, then the insurer cannot escape its duty to defend based on “its own assertions that there is no coverage in fact;” an insurer that tries to do so, without obtaining a final court order establishing that it has no duty to defend, “stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof.” Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 324 (1983).
3. Analysis of Landmark’s Motion to Dismiss. The parties agree that FBT’s intentional interference claim triggered Landmark’s duty to defend the Commission. Judge Kaplan’s dismissal of that claim could not have terminated Landmark’s duty to defend before all appeals were exhausted; in the interim, because there remained a chance that this decision could be reversed and the Commission could face liability for tortious interference. The facts alleged in the Commission’s complaint therefore plausibly suggest that Landmark breached its contractual obligations by withdrawing its defense of the Commission in May 2018 without waiting to learn whether the dismissal of the intentional interference claim would be affirmed or reversed on appeal, and without seeking a judicial declaration that Landmark’s duty to defend was terminated by Judge Kaplan’s decision.[8]
Once the SJC affirmed dismissal of this claim, however, Landmark’s duty to defend came to an end because the Commission no longer faced any potential liability for intentional infererence and the remaining regulatory taking claim falls within the plain language of a coverage exclusion provision. The Commission’s claims that Landmark continued to breach its duty to defend after the SJC decided the first appeal in the FBT action fail as a matter of law.
3.1. Continuing Duty to Defend after Judge Kaplan’s May 2018 Decision. Landmark’s argument that its duty to defend came to an end with Judge Kaplan’s May 2018 reaffirmation of his dismissal of FBT’s intentional interference claim, and therefore Landmark was entitled unilaterally to stop
 
--------------------------------------------
 
[8] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint  must make factual allegations that, if true, would “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
 
                                                            -9-
 
paying for the Commission’s defense costs at that point in time, is without merit.
Landmark correctly notes that, if all potentially covered claims have been dismissed with finality, and the only remaining claims fall directly within an unambiguous policy exclusion, then the insurer’s duty to defend is terminated. See Conway Chevrolet Buick, Inc. v. Travelers Indem. Co., 136 F.3d 210, 214 (1st Cir. 1998) (applying Massachusetts law); accord Westminster American Ins. Co. v. Spruce 1530 LLC, 853 Fed.Appx. 793, 795 (3d Cir. 2021) (applying Pennsylvania law). In other words, “when there are covered and non-covered claims in the same lawsuit,” the insurer’s duty to defend comes to an end if and when the lawsuit becomes limited with finality “to those claims outside of the policy coverage.” Mount Vernon Fire Ins. Co. v. Stagebands, Inc., 636 F. Supp. 2d 143, 147 (D.R.I. 2009), quoting Appleman on Insurance § 136.2[D] (2d ed. 2006).
This principle follows from the general rule that “an insurer's duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit or until it has been shown that there is no potential for coverage.” 14 Couch on Insurance § 200.48 (3d ed. 2007). The Supreme Judicial Court has recognized this general rule in dictum. See Vappi & Co. v. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 430 n.3 (1965) (insurer is not relieved of duty to defend until defense of insured has “narrowed the claims to those seeking ‘a recovery that the policy did not cover’ “) (quoting Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 753 (2d Cir. 1949).
And this principle is consistent with the Massachusetts Appeals Court’s holding that an insurer can “get clear of the duty [to defend] from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact—as distinguished from the appearances of the complaint and policy—the third party cannot establish a claim within the insurance.” Sterilite Corp., 17 Mass. App. Ct. at 323; accord Metropolitan, 460 Mass. at 358. “In other words, under Sterilite, the insurer is permitted to withdraw the defense when only ‘counts falling directly within the policy exclusions remain[].’ ” Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Town of Norwood, 267 F. Supp. 3d 320, 324 (D. Mass. 2017) (applying Massachusetts law), quoting Conway Chevrolet Buick, 136 F.3d at 214.
But the First Circuit erred in Conway Chevrolet Buick by holding that, under Massachusetts law, a trial court order dismissing all potentially covered claims will always terminate an insurer’s duty to defend without either (I) waiting for
                                                            -10-
 
the order to become final through the entry of judgment and a waiver of appellate rights or a final appellate decision, or (ii) seeking a declaration that the dismissal of potentially covered claims had the effect of terminating the insurer’s duty to defend.
Although “insurers can withdraw from a defense once all arguably covered claims have been dismissed,” they may do so unilaterally only once the dismissal has become final, which will not happen until a final appellate decision in the case. Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 416– 417 (Minn. 1997).
Alternatively, if the insurer and insured disagree about whether the dismissal of all potentially covered claims has terminated the duty to defend, then (as noted above) the insurer is free to file a declaratory judgment action to resolve whether it owes a duty to defend or indemnify, move to stay the underlying action in the meantime, and withdraw from the defense “if it obtains a declaration that it owes no duty to the insured.” Metropolitan, 460 Mass. at 358– 359; accord Deutsche Bank, 465 Mass. at 745. Landmark did not seek or obtain such a declaration.
In the absence of a declaration that an insurer’s duty to defend has terminated, “[t]he insurer's obligation to defend the suit against the insured does not end with a successful verdict in the trial court but includes the defense of any appeals that the claimant may make.” Meadowbrook, supra, at 416, quoting 7C John A. Appleman, Insurance Law and Practice § 4688, at 200 (Berdal ed. 1979). “In other words, the duty to defend continues through the appellate process until it can be concluded as a matter of law that there is no basis on which the insurer may be obligated to indemnify the insured.” Guest v. Allstate Ins. Co., 244 P.3d 342, 348 (N.M. 2010), quoting 14 Couch on Ins. § 200:49 (Supp. 2007).
Indeed, under Massachusetts law “an insurer's duty to defend generally encompasses an obligation to appeal from an adverse judgment against its insured,” so long as “reasonable grounds exist to believe that the insured's interest might be served by the appeal.” Davis v. Allstate Ins. Co., 434 Mass. 174, 180 (2001). If an insurer’s duty to defend may encompass a duty to appeal a verdict against its insured, it must also include a duty to continue to defend on a claimant’s appeal from a verdict in favor of the insured.
In  short,  “the  duty  to  defend  extends  through  the  appellate  process.” Meadowbrook,  supra;  accord,  e.g.,  Ziebart  Int'l  Corp.  v.  CNA  Ins. Companies,
 
                                                            -11-
 
78 F.3d 245, 248–49 (6th Cir. 1996) (under Michigan law, “an insured whose policy includes a ‘duty to defend’ clause is entitled to a defense from its insurer at both the trial and the appellate levels, unless the insurance contract specifically provides otherwise”).
It follows that, where a trial court has disposed of all potentially covered claims on a motion to dismiss or a motion for summary judgment, the insurer still “cannot withdraw from a defense until its duty to defend all arguably covered claims has been completely extinguished—in other words, when no further rights to appeal those arguably covered claims exist.” Meadowbrook, 559 N.W.2d at 417; accord Wells' Dairy, Inc. v. Travelers Indem. Co. of Illinois, 336 F. Supp. 2d 906, 911 (N.D. Iowa 2004) (predicting that Iowa Supreme Court would adopt holding of Meadowbrook); Klamath Pac. Corp. v. Reliance Ins. Co., 950 P.2d 909, 916 (Or. Ct. App. 1997) (en banc) (“An intermediate order from a trial court dismissing a claim is not a final resolution of that claim. Such an order does not relieve an insurer of its duty to defend.”).
Where a trial court dismisses the only potentially covered claim, an insurer’s duty to defend will continue so long as that claim “may be revived on appeal.” Anderson v. Kayser Ford, Inc., 925 N.W.2d 547, 555–560 (Wisc. Ct. App. 2019); accord Harrington Haley, LLP v. Nutmeg Ins. Co., 39 F.Supp.2d 403, 409 (S.D.N.Y.1999) (under New York law, duty to defend continued even though covered claims had been dismissed where it was possible that the appellate court could reverse).
The Commission was therefore entitled to have Landmark continue to pay for its defense in the FBT Action so long as there was a chance that the SJC might reverse Judge Kaplan’s decision and reinstate FBT’s claim for intentional interference with contractual relations. While the parties proceeded to undertake discovery relevant to the regulatory taking claim, they were engaging in litigation activity that would affect the Commission’s potential liability on a theory of intentional interference if Judge Kaplan’s dismissal of that claim were reversed on appeal. Under these circumstances, Landmark had a continuing duty to defend the Commission unless and until dismissal of the tortious interference claim was upheld on appeal.
There may be cases in which a trial court’s dismissal of all potentially covered claims is so obviously correct, and not subject to any real possibility of reversal on appeal, that an insurer would be entitled to a prompt declaratory judgment that it no longer has any continuing duty to defend its insured. Let’s say that
 
                                                            -12-
 
in the future the Commission was covered by an otherwise identical insurance policy that applied to claims filed during some future period, and a different plaintiff again sued the Commission for intentional interference and under a taking theory that falls within the plain language of the current Exclusion 12 (as discussed in the following section). In that hypothetical case, if the trial judge promptly dismissed the interference claim based on the SJC’s decision in this case, there would be no possibility that a potentially covered claim might be reinstated on appeal, and that future insurer would be entitled to a declaration that its duty to defend had terminated. Cf. Metropolitan, 460 Mass. at 358–359; accord Deutsche Bank, 465 Mass. at 745.
In this case, however, whether the Gaming Commission was a “public employer” within the meaning of the Massachusetts Tort Claims Act was a question of first impression, and it was quite possible that the SJC could have disagreed with Judge Kaplan’s analysis. The MTCA defines “public employer” to include the Commonwealth and commissions thereof, but excludes any “independent body politic and corporate.” See G.L. c. 258, § 1. This term “is not self-defining.” Lafayette Place Assocs. v. Bos. Redevelopment Auth., 427 Mass. 509, 529 (1998). But it “applies only to entities that enjoy political and financial independence.” Daveiga v. Boston Pub. Health Comm’n, 449 Mass. 434, 437 n.4 (2007). The Legislature granted the Commission substantial operational and regulatory independence. See G.L. c. 23K, §§ 4–5. For example, the Legislature “sharply curtailed the availability of judicial review of commission licensing decisions, and thereby vested a tremendous amount of discretion in the commission.” City of Revere v. Massachusetts Gaming Comm’n, 476 Mass. 591, 606 (2017); see also G.L. c. 23K, § 17(g). And the Commission is not dependent upon the Legislature to obtain funding, but instead funds its operations by assessing fees on applicants and recipients of gaming licenses. See G.L. c. 23K, §§ 56–57.
Thus, until the SJC decided the issue, it remained unclear whether the Commission would be treated as a “public employer” under the MTCA, and therefore whether FBT would be allowed to press its tortious interference against the Commission. Since Landmark did not obtain a declaratory judgment holding that its duty to defend had terminated, under these circumstances its duty to defend continued at least until the SJC issued its decision in the FBT Act.
In sum, the Commission’s complaint plausibly suggests that Landmark breached its contractual obligations by withdrawing its defense after Judge
 
                                                            -13-
 
Kaplan’s May 2018 decision. The Commission therefore has a viable claim to recover unpaid defense costs up until the date that the SJC affirmed dismissal of the intentional interference claim. And the Commission therefore also has a viable claim that it is entitled to recover the reasonable attorneys’ fees and litigation expenses incurred in bringing this action to enforce Landmark’s contractual duty to defend. See Hanover Ins., 436 Mass. at 586–588; Preferred Mut. Ins., 426 Mass. at 98.
3.2. No Duty to Defend after the SJC’s Decision. The SJC’s holding that the Commission is immune from liability for intentional torts under the Massachusetts Tort Claims Act established that Landmark no longer had any duty to defend the Commission in the FBT Action, because it is “an undisputed extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action.” Deutsche Bank, 465 Mass. at 745 n.10, quoting Metropolitan, 460 Mass. at 358, and Billings, 458 Mass. at 200 n.8.
Although FBT’s regulatory taking claim remained in the case, Landmark has met its burden of showing that this remaining claim falls squarely within an unambiguous policy coverage exclusion.[9] As noted above, exclusion 12 of the Policy provides that Landmark is not liable (and therefore has no duty to defend) as to any Claim “[a]lleging, arising out of, based upon, or attributable to inverse condemnation, temporary or permanent taking, adverse possession or dedication by adverse use.”
Since the Policy expressly excludes claims for “inverse condemnation” from being covered, it unambiguously bars coverage for FBT’s “regulatory taking” claim. The terms “inverse condemnation” and “regulatory taking” mean the same thing and refer to an identical cause of action. See Giovanella v. Conservation Comm'n of Ashland, 447 Mass. 720, 724 (2006); Smyth v. Conservation Comm'n of Falmouth, 94 Mass. App. Ct. 790, 794 (2019). The Commission conceded as much during oral argument. The Court need not consider the Commission’s  reasonable  expectations  about  the  scope  of  its  insurance
 
--------------------------------------------
 
[9] “An  insured bears the initial burden of proving that the claimed loss falls  within the coverage of the insurance policy. Once the insured does this, the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case.” Boazova v. Safety Ins. Co., 462 Mass. 346, 351 (2012) (internal citations omitted); accord, e.g., Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 81 Mass. App. Ct. 40, 52 (2011) (insurer “bears the burden of proving the applicability of an exclusion”).
 
                                                            -14-
 
coverage because “the plain language of the … exclusion unambiguously precludes coverage.” Finn v. National Union fire Ins. Co. of Pittsburgh, Pennsylvania, 452 Mass. 680, 697–698 (2008).
The Commission’s argument that this exclusion applies only to an alleged taking of real property, and not to an alleged regulatory taking of personal property, is both wrong and beside the point. It is wrong because the language of the exclusion unambiguously encompasses any taking of property, and in no way suggests that the exclusion might be limited to the taking of real property. This argument is beside the point because FBT’s regulatory taking claim alleged that the Commission had deprived FBT of the right to sell its real property for the highest possible price. The claim therefore alleges the taking of real property; the fact that FBT had to enter into a contract in order to sell its real property does not mean that it was alleging a taking of personal property, as the Commission wrongly contends.
The Commission’s further argument that Landmark has a continuing duty to defend even after the SJC’s decision in the FBT Action because the regulatory taking claim is based on the same factual allegations as the intentional interference claim also misses the mark.
The Court recognizes that, at the outset of the FBT Action, Landmark would have had a duty to defend if the FBT’s complaint had asserted only a regulatory taking claim but the facts alleged in the complaint suggested that the Commission may also be liable for intentional interference with a contract.
As noted above, when a lawsuit is first filed against an insured, the insurer has a duty to defend when the factual allegations in the underlying complaint “are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms. The duty to defend is determined based on the facts alleged in the complaint[.]” Billings, 458 Mass. at 200; accord Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10–11 (1989).
This follows from the general rules of pleading in civil litigation. A party that brings a civil action may seek relief under any legal theory fairly raised by the factual allegations in its complaint, even if that theory is not expressly invoked in the pleading. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988); see also Gallant v. City of Worcester,   383 Mass. 707, 709 (1981) (complaint may allege facts plausibly suggesting that plaintiff has viable claim even if complaint does not name correct legal theory).
 
                                                            -15-
 
But the starting principle that the facts alleged in the underlying complaint control, in deciding whether an insurer has a duty to defend, no longer applies now that the SJC has held that the Commission has complete immunity from liability for intentional interference with a contract. We now know that the facts alleged in the complaint are not reasonably susceptible of an interpretation that states a claim covered by the Policy. As a result, whether there is a duty to defend is no longer determined based solely on the facts alleged in the underlying complaint filed by FBT. See Deutsche Bank, 465 Mass. at 745 n.10; Metropolitan, 460 Mass. at 358; Billings, 458 Mass. at 200 n.8. Id.
In sum, as a matter of law Landmark no longer had any duty to defend the Commission after May 23, 2022, when the SJC decided that the Commission could not be sued for intentional interference with a contract.
ORDER
The motion to dismiss filed by defendant Landmark American Insurance Company is denied in part with respect to the claims that Landmark breached its duty to defend on or before May 23, 2022, and is allowed in part with respect to any claim that Landmark breached its duty to defend after May 23, 2022.